J-A01012-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIK SCOTT POPEJOY | : | |
| | : | |
| Appellant | : | No. 55 MDA 2021 |

Appeal from the Judgment of Sentence Entered January 24, 2019
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s): CP-66-CR-0000148-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIK SCOTT POPEJOY | : | |
| | : | |
| Appellant | : | No. 57 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 28, 2019
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s): CP-66-CR-0000148-2017

BEFORE: LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.: **FILED: MAY 25, 2022**

Appellant Erik Scott Popejoy appeals from the judgment of sentence imposed following his convictions for rape of a child and related offenses. Appellant argues that the trial court erred by allowing the Commonwealth to introduce evidence of Appellant's prior conviction under the common plan or scheme exception to Pa.R.E. 404(b). We affirm.

The trial court summarized the underlying facts of this case as follows:

On July 26, 2016, Wyoming County Children and Youth Services (CYS) caseworker Kelly Flaherty contacted Pennsylvania State Police Trooper John Youngblood to report [that Appellant] allegedly molested his live-in girlfriend's [] seven-year-old daughter. Trooper Youngblood did a check of the Pennsylvania Megan['s] Law registry, which indicated [that Appellant] was an active tier one offender.

On that date, the victim was taken into custody by CYS caseworkers. At that time, the victim disclosed to the caseworkers that [Appellant] bought her gifts, touched her "bad spots," and made her touch his "bad spot." Trooper Youngblood interviewed [Appellant's live-in girlfriend,] Marion Keithline [the victim's mother] who disclosed that she had an old cell phone that her minor daughter would use to play games.

The victim's mother allowed Trooper Youngblood to view the phone, which contained pornographic photographs that would also be sent to [Appellant's] phone, as well as numerous messaging applications that were sexually related.

Two days later, on July 28, 2016, the victim had a forensic interview and examination at the Susquehanna/Wyoming County Children's Center. During the interview, the victim stated that [Appellant] had been doing stuff to her, putting his bad spot in her bad spot, among other things.

Trial Ct. Op., 5/20/21, at 1-2.

On May 19, 2017, Appellant was charged with two counts of rape, four counts of aggravated indecent assault, three counts of indecent assault, five counts of corruption of minors, and one count each of statutory sexual assault,

criminal use of a communication facility, sexual abuse of children, and endangering the welfare of children.[1,2]

Prior to trial, the Commonwealth filed a motion *in limine* seeking to introduce evidence of Appellant's 1992 conviction for lewd and lascivious conduct in Florida. The Commonwealth argued that Appellant's prior conviction, which involved vaginal intercourse with a minor victim, was admissible to show a common plan or scheme. Following a hearing, the trial court granted the Commonwealth's motion. *See* Trial Ct. Order, 9/18/18.

The matter proceeded to a jury trial on September 20, 2018. Over the course of the four-day trial, the Commonwealth presented thirteen witnesses: the victim, the victim's biological father, the victim's biological mother, a forensic interviewer for the Child Advocacy Center, a pediatric sexual assault nurse examiner, the victim's foster mother, the victim's therapist, two caseworkers from Wyoming County Children and Youth, an expert in child sexual abuse, a forensic examiner at the Pennsylvania State Police crime lab, Trooper Michael Mosier, and Trooper Youngblood. Ultimately, the jury convicted Appellant of all charges.

---

[1] 18 Pa.C.S. §§ 3121(a)(1), 3121(c); 3125(b), 3125(a)(1), 3125(a)(2), 3125(a)(7); 3126(a)(7), 3126(a)(1), 3126(a)(2); 6301(a)(1)(ii); 3122.1(b); 7512(a); 6312(d); and 4304(a)(1), respectively.

[2] Appellant was also charged with failure to register under 18 Pa.C.S. § 4915.1(a)(1). However, those charges were transferred to a separate docket number.

On January 23, 2019, the trial court sentenced Appellant to an aggregate term of 301 to 602 months' incarceration. Appellant did not file a direct appeal.

On April 29, 2020, Appellant filed a *pro se* Post-Conviction Relief Act[3] (PCRA) petition seeking to reinstate his appeal rights *nunc pro tunc*. The PCRA court appointed counsel, who filed an amended petition on Appellant's behalf. Ultimately, on December 4, 2020, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*. Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.[4] The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issue:

Did the trial court err in allowing the admission of prior wrongs and/or bad acts involving sexual misconduct and conviction arising in [the] State of Florida where the underlying acts were neither similar to the current charges nor did the probity of the evidence outweigh the potential prejudice caused to Appellant?

Appellant's Brief at 2.

Before reaching the merits of Appellant's claims, we must address whether the trial court had jurisdiction to reinstate Appellant's direct appeal rights *nunc pro tunc*. **See Commonwealth v. Reid**, 235 A.3d 1124, 1143

---

[3] 42 Pa.C.S. §§ 9541-9546.

[4] The record reflects that Appellant requested an extension of time in which to file his Rule 1925(b) statement, which the trial court granted. After the transcripts of testimony were filed, Appellant filed his statement with the trial court.

(Pa. 2020) (stating that, "to confirm proper jurisdiction, it is appropriate for an appellate court to consider *sua sponte* the timeliness of a PCRA petition from which *nunc pro tunc* appellate rights have been reinstated").

As noted previously, Appellant did not file a direct appeal. Therefore, his judgment of sentence became final on Monday, February 25, 2019, and Appellant had until February 25, 2020 to file a timely PCRA petition. ***See*** 42 Pa.C.S. § 9545(b)(1). Accordingly, Appellant's April 29, 2020 PCRA petition was facially untimely. ***See id.***

However, the record reflects that Appellant initially sought reinstatement of his direct appeal rights on January 2, 2020. ***See*** *Pro Se* Mot. for Reinstatement of Appeal Rights, 1/2/20 (reflecting Appellant's claim that trial counsel failed to file a requested direct appeal). Rather than treat Appellant's filing as a timely first PCRA petition, ***see Commonwealth v. Taylor***, 65 A.3d 462, 466 (Pa. Super. 2013) (stating that "all motions filed after a judgment of sentence is final are to be construed as PCRA petitions"), and appointing PCRA counsel as required by Pa.R.Crim.P. 904(C), the trial court denied Appellant's motion without a hearing. ***See*** Trial Ct. Order, 3/24/20. Likewise, the trial court did not issue a Pa.R.Crim.P. 907 notice or give Appellant an opportunity to respond.

Moreover, although Appellant continued to seek relief from the trial court, ***see*** *Pro Se* Correspondence, 3/18/20; *Pro Se* Mot. for Extension of Time, 4/9/20, the trial court did not appoint PCRA counsel until May 5, 2020. Because Appellant was denied the right to counsel on his timely filed first PCRA

petition, the trial court's March 24, 2020 order cannot stand.  ***See Commonwealth v. Albrecht***, 720 A.2d 693, 699 (Pa. 1998) (stating that "[t]he denial of PCRA relief cannot stand unless the petitioner was afforded the assistance of counsel"); ***see also Commonwealth v. Stossel***, 17 A.3d 1286, 1290 (Pa. Super. 2011) (explaining that "where an indigent, first-time PCRA petitioner was denied his right to counsel – or failed to properly waive that right – this Court is required to raise this error *sua sponte* and remand for the PCRA court to correct that mistake").

Under these circumstances, we conclude that a breakdown in court operations prevented Appellant from exercising his rights pursuant to his timely filed first PCRA petition.  ***See, e.g., Commonwealth v. Mojica***, 242 A.3d 949, 954 (Pa. Super. 2020) (addressing the merits of a *pro se* petition where the petitioner's missteps in amending his PCRA petition were directly attributable to the PCRA court's error, and noting that, under Pa.R.Crim.P. 905(a), amendments to PCRA petitions "shall be freely allowed to achieve substantial justice"), *appeal denied*, 252 A.3d 595 (Pa. 2021); ***Commonwealth v. Lopez***, 1589 EDA 2018, 2019 WL 2406726 at *3-4 (Pa. Super. filed June 6, 2019) (unpublished mem.) (concluding that it was necessary to address the claims raised in a facially untimely PCRA petition because a breakdown occurred at the PCRA level); ***see also*** Pa.R.A.P. 126(b)(1)-(2) (stating that non-precedential decisions filed by this Court after May 1, 2019 may be cited for persuasive value).

In any event, because the trial court subsequently granted Appellant's requested *nunc pro tunc* relief, it is unnecessary for us to remand the matter for further proceedings. Therefore, we will proceed to address the merits of Appellant's claim.

**Evidence of Prior Conviction**

Appellant argues that the trial court erred in allowing the Commonwealth to introduce evidence concerning his prior conviction for lewd and lascivious conduct. Appellant's Brief at 23.

By way of background to this claim, we note that at trial, the Commonwealth introduced evidence that Appellant had been convicted of lewd and lascivious conduct with a minor in 1992. *See* N.T. Trial at 755. With respect to the underlying facts of the conviction, the victim's mother stated that Appellant was twenty-three years old at the time of the offense. *Id.* at 235. She stated that Appellant had been in a relationship with a female who he believed to be nineteen years old, although he later discovered that she was fifteen years of age. *Id.* The victim's mother also stated that Appellant ultimately married the female after Appellant obtained consent from the female's parents. *Id.* at 236. Trooper Moser testified that the victim's mother informed him about Appellant's conviction during her initial interview with police. *Id.* at 277.

Caseworker Kelly Flaherty testified that during the course of their investigation into the initial complaint, she and caseworker Meagan Janizsewski discovered that Appellant had a prior conviction for sexual assault

involving a minor. *Id.* at 659. Ms. Flaherty also confirmed that the victim's mother knew about Appellant's conviction and the fact that the case involved a minor. *Id.* at 667.

Trooper Youngblood also testified that he discovered the conviction during the course of his investigation. *Id.* at 754. He stated that he asked Appellant about the conviction during his police interview, and that Appellant "explained that it was a misunderstanding between the ages. The juvenile purported to be an adult and he believed she was an adult." *Id.* However, Trooper Youngblood indicated that Appellant did not try to deny the conviction. *Id.*

Appellant argues that "whether to prove motive, intent or more particularly, common plan or scheme, or identity, the record demonstrates that there was no logical nexus such that 'proof of one [offense] tends to prove the other.'" Appellant's Brief at 23. In support, Appellant argues that "[t]here were no similarities" between the two offenses, other than the fact that "the alleged victims were minors under the age of 18 and, though distinct in manner of how they became associated with the Appellant, had contact with the Appellant, which is general to all sexual assault cases involving a minor." *Id.* at 24. Appellant also argues that the prior conviction was unduly prejudicial because it improperly bolstered victim's testimony "suggest[ed] to the jury that if he did it in the past, he did it now." *Id.* at 28.

The Commonwealth responds that the evidence was relevant "to show a common scheme, plan or design as [] Appellant is clearly a person that

seeks out opportunities to engage in illicit sexual contact with minors for his own sexual gratification." Commonwealth's Brief at 11. The Commonwealth emphasizes that although the Florida offense occurred twenty-four years before the crime in the instant case, Appellant was incarcerated for approximately twenty years. *Id.* at 5. As such, the Commonwealth asserts that the two crimes are not too remote in time. *Id.* The Commonwealth also argues that the offenses are similar because they both involved minor victims who were in "a particularly vulnerable state in which the Appellant was in a position of superiority and power providing a place to live for each victim." *Id.* at 8. Although the victims were different ages, the Commonwealth notes that both victims were under sixteen, which makes them "members of a particularly protected class of victims as a result of their tender years." *Id.* at 6. Finally, the Commonwealth alleges that the evidence was necessary for the Commonwealth to prove its case, which relied solely on the victim's credibility. *Id.* at 11.

In reviewing a challenge to the admissibility of evidence, our standard of review is as follows:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law,

discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. LeClair***, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted), *appeal denied*, 244 A.3d 1222 (Pa. 2021).

Pennsylvania Rule of Evidence 404(b) prohibits the introduction of evidence concerning a defendant's prior bad acts "to prove a [defendant's] character in order to show that on a particular occasion the [defendant] acted in accordance with the character." Pa.R.E. 404(b)(1). However, subsection (b)(2) of the Rule provides that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Further, the Rule states that such "evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." ***Id.***

With respect to the common plan exception, this Court has explained:

[T]he trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the

- 10 -

evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. Tyson*, 119 A.3d 353, 358-59 (Pa. Super. 2015) (*en banc*).

This Court has stated that "[t]he degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under this exception." *Commonwealth v. Einhorn*, 911 A.2d 960, 967 (Pa. Super. 2006). In evaluating the connection between a prior bad act and the charged offense, the Commonwealth must show more than that the defendant committed crimes "of the same general class." *Tyson*, 119 A.3d at 360 (citation omitted). Further, the similarities between the prior bad act and the charged crime must not be "confined to insignificant details that would likely be common elements regardless of who had committed the crimes, but rather [must] truly represent [the defendant's] signature." *Commonwealth v. Hughes*, 555 A.2d 1264, 1283 (Pa. 1989) (citation omitted). As we have explained, the criminal acts must be so related that "proof of one tends to prove the other." *Commonwealth v. Ross*, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*) (citation omitted).

This Court has also explained that "the importance of the intervening time period [between crimes] is inversely proportional to the similarity of the

- 11 -

crimes in question." ***Einhorn***, 911 A.2d at 967 (citations and quotation marks omitted). Therefore, "[t]he longer the time between the crimes, the more similar the crimes need to be." ***Commonwealth v. Saez***, 225 A.3d 169, 178 (Pa. Super. 2019) (citation omitted).

Here, the trial court granted the Commonwealth's motion to introduce Appellant's 1992 conviction for lewd and lascivious conduct as evidence of a common plan or scheme. ***See*** N.T. Hr'g, 9/14/18, at 61-62. In its Rule 1925(a) opinion, the trial court explained:

> On October 12, 1992, [Appellant] was convicted in Florida for the offense of lewd, lascivious acts upon or in the presence of a child for having sexual intercourse with a minor. The Commonwealth sought to admit this evidence to show a common plan or scheme. Both the Florida case and the instant case involved vaginal intercourse with a minor.
>
> *       *       *
>
> [G]iven the similarities of facts surrounding the charges in Florida and the instant matter, the Commonwealth sought to introduce this evidence to show a common scheme or pattern. This court granted the Commonwealth's motion by order on September 18, 2018.

Trial Ct. Op. at 7.

Based on our review of the record, we conclude that the trial court erred in granting the Commonwealth's motion to admit Appellant's prior conviction under the common plan or scheme exception to Rule 404(b). Although both the instant case and the 1992 conviction involved allegations that Appellant had vaginal intercourse with a minor victim, these facts would be "common

elements regardless of who had committed the crimes." *See Hughes*, 555 A.2d at 1283; *see also Tyson*, 119 A.3d at 358-59.

Further, as noted previously, Appellant was twenty-three years old at the time he was charged with sexually assaulting the fifteen-year-old female victim in Florida. In the instant case, Appellant was forty-seven years old when he was charged with sexually abusing his girlfriend's child, who was seven years old when the abuse occurred. Although the allegations are arguably "of the same general class[,]" the underlying circumstances of these two cases are wholly distinct. *Cf. Tyson*, 119 A.3d at 360. Therefore, the trial court erred in concluding that Appellant's prior conviction was admissible to show a common plan or scheme.

In any event, it is well settled that "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Bond*, 190 A.3d 664, 667 (Pa. Super. 2018) (citation omitted). An error is not harmful or prejudicial, *i.e.*, is a "harmless error," when the Commonwealth proves:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Burno*, 154 A.3d 764, 796 (Pa. 2017) (citations omitted);

*see also Commonwealth v. Hamlett*, 234 A.3d 486, 492 (Pa. 2020) (stating

that "*sua sponte* invocation of the harmless error doctrine is not inappropriate as it does nothing more than affirm a valid judgment of sentence on an alternative basis" (citation omitted)).

Here, at trial, the victim testified that Appellant touched her "on [her] bottom part and put his bottom part into [hers]" and that he did so "a lot of times." N.T. Trial at 69. She also stated that Appellant touched her "top" and "bottom part" with his hands and his tongue. *Id.* at 71. The victim testified that Appellant used his phone to take nude photos of her and showed the victim pornographic images and videos of other people. *Id.* at 73, 76-77. On one occasion, the victim stated that her mother tied her to a chair and Appellant made her watch videos of people touching each other. *Id.* at 80.

In addition to the victim, the Commonwealth presented multiple witnesses who described the victim's disclosures about the abuse. The victim's mother testified that the victim had reported the abuse to her more than one time. *Id.* at 231. She also stated that she had seen pornographic videos and photos on Appellant's phone. *Id.* at 195-96.

The Commonwealth also presented the victim's father, the victim's foster mother, the victim's therapist, the forensic interviewer, and the victim's caseworkers from CYS. Each of these witnesses testified that the victim disclosed more than one instance of vaginal penetration by Appellant and stated that Appellant had shown the victim pornographic images and video on his phone.

The Commonwealth also presented witnesses who testified about the investigation. Emily Way, a pediatric sexual assault nurse examiner, testified that she examined the victim on July 28, 2016. *Id.* at 372. Ms. Way testified that she did not observe anything particularly abnormal. *Id.* at 375. However, she explained that "the female genital organs [] heal very quickly" and that "even a week after something has happened, the area may have healed and there would be no scarring or evidence of the potential abuse at that time." *Id.* at 373. Further, Ms. Way stated that "there can still be potential sexual abuse or assault without there actually being . . . physical findings. Even in a seven year old . . . there's definitely the possibility that something had [] happened" and even if Ms. Way had "assessed [the victim] immediately after, there might not have been anything to see." *Id.* at 375.

Stefan Gerneth, a forensic examiner from the state police crime lab, stated that he recovered thousands of pornographic videos and images on Appellant's phone and Google Drive account, including at least five images that depicted child pornography. *Id.* at 618. Mr. Gerneth testified that during his investigation, he discovered that Appellant had used a computer application called "Clean Sweep" to permanently delete 349 photos from his account on July 21, 2016. *Id.* at 620. Mr. Gerneth also noted that Appellant had launched the "Clean Sweep" application 63 times between July 21, 2016 and July 29, 2016. As a result, 349 images were unrecoverable. *Id.* Mr. Gerneth explained that he often sees the "Clean Sweep" application running

on "cell phones that are involved in some kind of criminal activity." *Id.* at 622.

Trooper Youngblood testified that the dates of Appellant's use of the "Clean Sweep" application were significant because "it was in the midst of everything coming to light regarding [the victim] making an allegation and law enforcement finding out about it." *Id.* at 780. Trooper Youngblood stated that Appellant's behavior indicated that he was "trying to get rid of something hastily." *Id.* at 781. Trooper Youngblood stated that he had no further contact with Appellant after his initial police interview on July 29, 2016. *Id.* at 786. However, he explained that at Appellant's preliminary hearing, Appellant "snickered and laughed and said it's going to be funny watching you guys prove penetration. Her hymen's still intact." *Id.* at 786.

Based on the testimony of the multiple witnesses, the consistency of the victim's statements, the victim's detailed trial testimony, and the state troopers' testimony about Appellant's evasive behavior, we conclude that there was overwhelming evidence proving Appellant's guilt. *See Burno*, 154 A.3d at 796; *see also Commonwealth v. McDonough*, 96 A.3d 1067, 1069 (Pa. Super. 2014) (stating that physical evidence is not required in sexual assault cases and that "[t]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant" (citation omitted). In light of this overwhelming evidence, we conclude that the effect of the error was insignificant by comparison and could not have

contributed to the verdict. **See Burno**, 154 A.3d at 796. Accordingly, we affirm. **See Hamlett**, 234 A.3d at 492.

Judgment of sentence affirmed.

Judge King joins the memorandum.

Judge Lazarus concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/25/2022