J-S26018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARGARET M. FITZPATRICK | : | |
| | : | |
| Appellant | : | No. 1489 MDA 2021 |

Appeal from the Judgment of Sentence Entered October 13, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001040-2018

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                     **FILED MARCH 20, 2023**

Margaret M. Fitzpatrick (Appellant) appeals from the judgment of sentence entered in the York County Court of Common Pleas, following her jury convictions of theft by deception, receiving stolen property, and theft by failure to make required disposition of funds.[1]  Appellant avers the trial court abused its discretion in: (1) denying her Pa.R.Crim.P. 600 speedy-trial motion; (2) admitting Pa.R.E. 404(b) evidence of prior bad acts; and (3) imposing aggravated-range sentences and running them consecutively, for an aggregate sentence of two to four years' imprisonment.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3922(a)(1), 3925(a), 3927(a).

## I. Facts & Procedural History

The underlying facts are not in dispute. Appellant falsely held herself out to the public as an attorney, and she headed a non-profit organization, Mediation Ministries and Litigation Alternatives, which purported to help vulnerable individuals. *See* Trial Ct. Op., 1/4/22, at 21. She met the victim in this matter, John Nicholson (the Victim), at church. *Id.* at 2.

> The Victim previously worked
>
> as a manual laborer until 2008 when he became physically disabled as the result of multiple back, elbow, and neck surgeries for which he continues to take prescribed Fentanyl to manage the physical pain. [The Victim's] inability to work . . . led to depression and financial hardships, and [he] takes different psychotic medications to manage his depression.
>
> [The Victim's] disabilities and dire financial situation prompted him to obtain help from Appellant to manage his money as he was not thinking clearly at the time and could not mentally manage his money by himself due to his depression and different prescribed medications.
>
> After being out of work for several years, [the Victim] applied for Social Security Disability with Appellant's assistance in June of 2012.

Trial Ct. Op., 1/4/22, at 1-2 (footnotes omitted & paragraph breaks added). At that time, the Victim was approximately 47 years old. *See* N.T. Jury Trial, 9/7-9/21, at 116.

> The trial court summarized:
>
> Appellant [executed] an "Appointment of Representative" document, which appointed [her] as the payee of [the Victim's] Social Security benefits. [The Victim] believed that Appellant, as the assigned payee of his benefits and an attorney, would manage his funds on his behalf and trusted that she would appropriately

- 2 -

handle his finances. Appellant told [the Victim] she would use his Social Security money to pay his bills, including rent and utilities.

In 2013, [the Victim] was awarded Social Security benefits[, as well as] $23,000 in back pay for the time that he waited for his application to be approved, which was deposited into Appellant's account for the purposes of paying [the Victim's] bills.

However, [the Victim] began receiving eviction notices, his electricity was turned off, and his medical bills and car insurance were not paid. [The Victim] reassigned Pastor James McCoy . . . as his . . . new representative payee, and [the Victim's] bills were paid on time by Pastor McCoy with [the Victim's] Social Security monies.

However, neither Pastor McCoy nor [the Victim] ever received the $23,000 in back pay from Appellant, despite [the Victim] confronting Appellant and asking for his money. . . . At the time of trial, Appellant had still not returned [the Victim's] $23,000 . . . nor provided an explanation of what she had done with that money.

Trial Ct. Op., 1/4/22, at 2-3 (footnotes omitted & paragraph break added).

On January 5, 2018, the Commonwealth filed an information, charging Appellant with theft by deception, receiving stolen property, and theft by failure to make required disposition of funds. A jury trial was scheduled for August 2, 2021.

On July 29, 2021, four days before the scheduled trial, the Commonwealth filed a motion *in limine* to admit evidence of Appellant's prior bad acts under Pa.R.E. 404(b). First, Appellant had another pending York County criminal case[2] (York County Charges), in which she was charged with

_____

[2] This case was docketed at York County docket CP-67-CR-0007490-2018.

- 3 -

theft by failure to make required disposition of funds. Second, in Cumberland County, Appellant had pleaded *nolo contendere* to theft by unlawful taking (Cumberland County Plea).[3] In both matters, Appellant was alleged to: have held herself out to be an attorney; promoted Mediation Ministries as a non-profit that assisted the elderly and others in need; have been named as the attorney-in-fact for the elderly victims, who suffered from dementia or cognitive issues; and acquired the victims' funds — $182,000 and $17,500, respectively — but failed to use those funds for the victims' benefit, as she had agreed to. The Commonwealth argued the evidence was admissible to show Appellant uses a common scheme, plan, or design, as well as Appellant's intent to deceive. *See* N.T., 8/5/21, at 128.

On August 2, 2021, the instant case was called for trial, as scheduled. N.T., 8/2/21, at 2. However, the trial court and parties addressed the Commonwealth's outstanding motion *in limine*, and the court determined it would conduct a hearing, and thus trial would not commence that day. *See id.* at 15. Appellant then stated that both parties agreed the Pa.R.Crim.P. 600 adjusted run date would fall "possibly [that] week." *Id.* Appellant argued this new delay should be attributed to the Commonwealth, who had "filed the

---

[3] This other Cumberland County matter was docketed at trial docket CP-21-CR-0000497-2019. This Court affirmed the judgment of sentence on direct appeal. *Commonwealth v. Fitzpatrick*, 1318 MDA 2020 (unpub. memo.) (Pa. Super. May 24, 2021) (rejecting Appellant's claim her *nolo contendere* plea was not voluntarily entered).

- 4 -

incredibly late" Rule 404(b) motion and notice. *Id.* at 16. The assistant district attorney responded she "came in late to the [case]" and did not "find out about the" Cumberland County Plea until the prior week, when she "Googled [Appellant's] name[.]" *Id.* at 14, 23. The Commonwealth further argued Appellant had no credible notice argument, as Appellant knew of her own criminal cases and thus there was no surprise. *Id.* at 23. The trial court indicated it would find, contrary to Appellant's argument, the additional time to be excludable. *Id.* at 29.

Three days thereafter, on August 5, 2021, the trial court conducted a hearing on the Commonwealth's motion *in limine*.[4] By this time, the York County Charges had been *nolle prossed* by the Commonwealth, for Rule 600 reasons.[5] Nevertheless, relatives of the victims in both cases, as well as police detectives and county agency employees who investigated claims of the elderly abuse, testified. Appellant did not present any witnesses or evidence.

The trial court issued its decision on August 30th, granting the motion in part and denying it in part. With respect to the York County Charges — in

_____

[4] We note the motion *in limine* was heard by the Honorable Maria Musti Cook, President Judge. Thereafter, the Honorable Harry Ness presided over trial and sentencing.

[5] *See* N.T., 8/2/21, at 4-5 (Commonwealth acknowledging York County Charges "will be dismissed by the Commonwealth due to due diligence issues"); Trial Ct. Op., 1/4/22, at 19 (Appellant was not convicted on the York County charge "due to Rule 600").

which there was no conviction and no proof of the offense charged — the trial court limited the admission of evidence to Appellant's: (1) holding herself out in the community as an attorney and prior judge; and (2) founding Mediation Ministries, a faith-based organization, to assist the elderly and disabled. Trial Ct. Op., 8/30/21, at 4-5. With respect to the Cumberland County plea, the trial court permitted the same evidence, as well as evidence that the victim was elderly and suffered from early onset of Alzheimer's disease, and Appellant acquired more than $17,500 of the victim's funds, but failed to use the funds for the benefit of the victim. ***See id.*** at 5.

Thereafter, a jury trial commenced on September 7, 2021. Appellant also filed a Rule 600 motion, which was denied. The Victim testified to the underlying facts, as summarized above. Pertinently, witnesses also testified about Appellant's Cumberland County Plea and York County Charges, as permitted by the trial court's Rule 404(b) ruling. Appellant did not testify or present any evidence. The jury found her guilty of all three charges: theft by deception, receiving stolen property, and theft by failure to make required disposition of funds.

On October 13, 2021, the trial court imposed the following aggravated-range sentences, to run consecutively: (1) one to two years' imprisonment for theft by deception; and (2) one to two years' imprisonment for theft for failure

to make required disposition of funds.[6]  Appellant filed a timely post-sentence motion, which was denied.  She then took this timely appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[7]

## II.  Statement of Questions Presented

Appellant presents the following issues for our review:

1.  Did the trial court abuse its discretion in denying [Appellant's] Motion to Dismiss Pursuant to Pa.R.Crim.P. 600 where, even if it had not already violated Rule 600, the Commonwealth filed a complex motion requiring testimony from eight witnesses only four days before trial was scheduled to begin and offered no evidence of due diligence?

2.  Did the trial court abuse its discretion in allowing extensive evidence of the allegations from one case at [Appellant's] trial on another case, as the court misconceived the "common scheme" exception to Rule 404(b), the evidence in question fit no exception to the rule, and the evidence was more prejudicial than probative in any event?

3.  Did the sentencing court abuse its discretion in running two aggravated-range terms of incarceration consecutively despite the fact that both convictions were premised on taking the same money from the same person?

Appellant's Brief at 4.

---

[6] The sentence for receiving stolen property merged.

[7] Appellant requested bail pending appeal, which the trial court denied. Shortly after filing her notice of appeal, she filed, on November 12, 2021, in this Court a petition for review of that decision.  The trial court issued an opinion setting forth its reasoning, and this Court denied relief on December 27th.  *See* Order, 73 MDM 2021 (Pa. Super. Dec. 27, 2021).

### III. Rule 600 – Speedy Trial

In his first issue, Appellant avers the trial court abused its discretion in denying her Rule 600 motion. We first note the relevant standard of review and guiding Rule 600 principles:

In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Carl*, 276 A.3d 743, 748 (Pa. Super. 2022) (citation omitted), *pet. appeal filed*, Aug. 8, 2022, 337 MAL 2022 (Pa.).

This Court has explained:

[Rule] 600 provides that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). In computing the Rule 600 deadline, however, we do not necessarily count all time following the filing of the complaint. Rather, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

The Rule 600 analysis thus entails three steps:

First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

> If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600([D]). . . . Rule 600[ ] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600[ ] extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Carl*, 276 A.3d at 749 (some citations omitted). "The Commonwealth bears the burden of proving, by a preponderance of evidence, that it acted with due diligence throughout the proceedings." *Id.* at 748 (citation omitted).

> We also consider the dual public policy concerns behind Rule 600:
>
> Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. . . .
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters . . . , courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Carl*, 276 A.3d at 748 (citations omitted).

We reiterate the Commonwealth filed a complaint on January 5, 2018, and trial commenced three years and eight months later, on September 7, 2021. On appeal, Appellant sets forth four periods of excludable delay, totaling 674 days. Pertinently, she included the period between March 2

- 9 -

through November 2, 2020 (245 days), which we note overlaps with both the statewide and York County judicial emergencies declared for the COVID-19 pandemic.[8] Appellant's Brief at 35. Based on her figures, Appellant contends the adjusted run date was November 9, 2020. *Id.* In this argument, Appellant emphasizes the 18 day-span between November 2 and 20, 2020, should **not** be excluded. *Id.* at 35-37. She acknowledges "Rule 600 was suspended due to the COVID-19 pandemic at certain points in 2020 and 2021[, but argues it] was not suspended under the [October 8, 2020,[9]] declaration in effect at [that] time." *Id.* at 36. Appellant also reasons "the Commonwealth [sic] conducted numerous trials during this period." *Id.* at 35 (citation omitted).

In the alternative, Appellant asserts the adjusted run date was **August 9, 2021**, if the court were to include an additional 273 days of delay (November 2, 2020, through August 2, 2021,) due to "the re-suspension of jury trials in York County, followed by two defense continuances."[10] *See*

---

[8] *See* 531 Jud. Admin. Docket (order) (Pa. Mar. 16, 2020); 19th Judicial District, M 2020 (order) (York Co. Mar. 17, 2020); Appellant's Brief at 35.

On appeal, Appellant does not cite a reason why this period should be excluded. *See* Appellant's Brief at 35. In her Rule 600 motion, however, Appellant attributed this period to two defense requests for a trial continuance. Appellant's Motion for Dismissal Pursuant to Pa.R.Crim.P. 600, 9/7/21, at 6 (Rule 600 Motion).

[9] *See* Declaration, 19th Judicial District, 31 MM 2020 (York Co. Oct. 8, 2020).

[10] In her appellate brief, Appellant arrives at the August 9, 2021, adjusted run date by: (1) starting with the November 9, 2020, date; and (2) adding 18
*(Footnote Continued Next Page)*

Appellant's Brief at 37; Appellant's Rule 600 Motion at 7. Appellant maintains, however, the Commonwealth's July 29th, "last-second filing" of its motion *in limine* showed a lack of due diligence, especially where the York County Charges were filed years earlier, in 2018. Appellant's Brief at 39, 40. Appellant contends: "the Commonwealth never provided any reason for [its] 11th-hour filing[;]" and "the needlessly belated filing . . . prevented trial from [commencing] as scheduled." *Id.* at 39, 41. We conclude no relief is due.

We summarize that on March 16, 2020, the Pennsylvania Supreme Court declared a general statewide judicial emergency due to the COVID-19 pandemic. The Court authorized President Judges to declare judicial emergencies in their respective judicial districts, and to suspend the operation of Rule 600 within their districts. 531 Jud. Admin. Docket (order at 1, 2) (Pa. Mar. 16, 2020). The following day, York County/19th Judicial District President Judge, the Honorable Joseph Adams, declared a local judicial

---

days — the period from November 2 to 20, 2020. Appellant's Brief at 35-36 ("[T]he adjusted run date would be November 9, 2020, if [the 18 days between November 2 and 20, 2020,] were included in the Rule 600 calculations, but would be August 9, 2021 if this period were excluded."). This calculation, however, is mistaken, as: (1) there are 273 days between November 9, 2020, and August 9, 2021; and (2) the starting date, November 9th, falls within the November 2nd to 20th period.

On the other hand, Appellant's Rule 600 motion referred to a 273-day "additional period of delay," which resulted from the suspension of jury trials in York County, followed by two defense continuances. Appellant's Rule 600 Motion at 7. We incorporate this argument into our discussion above.

emergency, and specified the operation of Rule 600 would be suspended for the duration. No. M 2020 (order) (19th Judicial District, Mar. 17, 2020).

The general **statewide** judicial emergency ended on June 1, 2020. **See** 531 & 532 Jud. Admin. Docket (order at 1) (Pa. May 27, 2020). However, the Pennsylvania Supreme Court provided that local emergencies would continue to remain in full force and effect. **Id.** Accordingly, through multiple York County orders issued from May of 2020 through April of 2021, the York County judicial emergency continued through at least June 30, 2021.[11] Pertinently, most of these orders specified the operation of Rule 600 would be suspended.

_____

[11] We note that on February 11, 2021, the York County President Judge declared the local judicial emergency was extended through June 30, 2021. On April 7th, the President Judge issued a declaration extending the judicial emergency through September 30th.

On July 1, 2021, however, the President Judge filed a "Request for Emergency Judicial Order" with the Pennsylvania Supreme Court, requesting, *inter alia*: (1) acknowledgment of the declaration of judicial emergency through August 31, 2021; and (2) permission to use advance communication technology to conduct court proceedings through August 31, 2021. On July 2nd, the Supreme Court allowed the use of advanced communication technology through August 31, 2021, but denied relief "[i]n all other respects." No. 31 MM 2020 (order) (Pa. July 2, 2021).

In light of the foregoing, an issue could be raised as to when the Pennsylvania Supreme Court ceased to recognize or authorize a judicial emergency in York County. We emphasize, however, that Appellant has not raised such a question for our review, and thus we do not reach it. Instead, we note the trial court found August 9, 2021, to be the adjusted run date — to which Appellant agrees in her alternative argument. **See** Trial Ct. Op., 1/4/22, at 9; Appellant's Brief at 37. We limit our review to the arguments presented in her appellate brief.

Additionally, declarations, issued November 24, December 9, and December 21, 2020, and January 7, 2021, stated jury trials would be suspended through February 28, 2021.

This Court has had occasion to review one such York County order, issued May 27, 2020, which stated in pertinent part:

> . . . I declare a judicial emergency in the 19th Judicial District through August 31, 2020. During the emergency, the following shall apply:
>
> \* \* \*
>
> (3) Suspend statewide rules pertaining to the rule-based right of criminal defendants to a prompt trial.
>
> Any postponement caused by the judicial emergency shall be considered a court postponement and shall constitute excludable time for purposes of the application of Rule 600. . . .

**Carl**, 276 A.3d at 747, *quoting* No. 31 MM 2020 (order) (19th Judicial District, May 27, 2020). This Court held the plain language of this order "clearly and simply direct[ed] that rule-based, 'prompt trial' time computations [were] suspended for the duration of the judicial emergency at hand." **Carl**, 276 A.3d at 750.

In light of the foregoing, we disagree with Appellant's contention that the adjusted run date was November 9, 2020. This argument ignores the ongoing, extended COVID-19 judicial emergency that was declared in York County through at least June 30, 2021, along with the specific pronouncement that the operation of Rule 600 would be suspended. **See Carl**, 276 A.3d at 750.

Accordingly, we consider Appellant's alternative proposed date of August 9, 2021 — which the trial court found to be the adjusted run date.[12] **See** Trial Ct. Op., 1/4/22, at 9; Appellant's Brief at 37. The trial court reasoned: the Commonwealth had filed its July 29, 2021, motion *in limine* before that date; Appellant's case was called to trial on August 2nd; but the "court decided to postpone the commencement of trial to hear the [motion] just three days later on August [5th], which was before the August [9th] run date." Trial Ct. Op., 1/4/22, at 9. The court thus found the delay was caused by the court itself, and not any lack of due diligence on the part of the Commonwealth. **Id.**

The trial court's reasoning, however, does not address Appellant's challenge to the late timing of the Commonwealth's motion. **See** Appellant's Rule 600 Motion at 8 ("There is no valid explanation consistent with diligence for why the Motion in Limine could not have been filed and litigated any time in the past year."). The assistant district attorney's representation, at the August 2, 2021, hearing, that she "came in late to the [case]" and "happened to do a Google search" one week earlier, does not explain why prior assigned prosecutors could not discover, with due diligence, Appellant's two criminal matters — one of which was in the same county. **See** N.T., 8/2/21, at 23.

_____

[12] This argument is consistent with Appellant's statements at the August 2, 2021, hearing. **See** N.T., 8/2/21, at 15 (Appellant's counsel stating, "We both agree that this case is pushing Rule 600 possibly this week.").

Nevertheless, we also consider, as the trial court pointed out, that the court conducted a hearing on the motion *in limine* on August 5, 2021, merely three days after the initial call of the case for trial, and still within the adjusted run date of August 9th. The court did not issue a decision until 14 days later, on August 30th, and trial commenced one week after that, on September 7th. Furthermore, Appellant has not established the timing of the Commonwealth's filing was intentional and undertaken "in an effort to evade [her] fundamental speedy trial rights." *See Carl*, 276 A.3d at 748. We must also "carefully factor . . . the collective right of the community to vigorous law enforcement," an issue that Appellant has not addressed. *See id.* Finally, we observe that a large portion of the excludable time resulted from the COVID-19 judicial emergency. On balance, we decline to find the trial court abused its discretion — that it overrode or misapplied the law or acted with partiality, prejudice, bias, or ill will. *See Carl*, 276 A.3d at 748. Accordingly, we do not disturb the order denying Appellant's Rule 600 motion.

### IV. Admission of Rule 404(b) Prior Bad Acts

Next, Appellant claims the trial court erred in admitting the Rule 404(b) evidence of prior bad acts. We note "the admissibility of evidence is within the discretion of the trial court," and an appellant bears a "heavy burden" to show the court abused its discretionary power. *Commonwealth v. Saez*, 225 A.3d 169, 177 (Pa. Super. 2019) (citations omitted).

This Court has explained:

Rule 404(b) of the Pennsylvania Rules of Evidence provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." [Pa.R.E. 404(b)(1).] However, "evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, intent, preparation, plan, or knowledge . . . ." [Pa.R.E. 404(b)(2).]

Therefore, evidence of other crimes or acts may be admitted if such evidence proves "a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others." A common scheme may be relevant to establish any element of a crime, where intent may be shown through a pattern of similar acts.

The degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under this exception.

*Saez*, 225 A.3d at 178 (some citations omitted & paragraph break added).

Additionally, Rule 404(b) "evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). With respect to the common plan exception,

[r]elevant . . . will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. . . .

[T]he court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Saez*, 225 A.3d at 180 (citation omitted & paragraph break added). Finally, we note, "In balancing the probative value of the evidence against its

prejudicial impact, . . . a trial court 'is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration.'" *Id.* at 180-81 (citation omitted).

Here, Appellant challenges the admission of the evidence relating to her Cumberland County Plea.[13] She first claims the trial court "misconceived the 'common scheme' exception," which she maintains applies to acts that are a part of the same single, overarching plan. Appellant's Brief at 45, 47. Appellant contends that while the instant case and the Cumberland County Plea share "similarities," "they were not part of single plan or a common scheme." *Id.* at 47, *citing* **Commonwealth v. Hicks**, 156 A.3d 1114, 1143 (Pa. 2017) (Donahue, J., dissenting). Instead, Appellant asserts, the two cases have "glaring differences." Appellant's Brief at 49. For example, she reasons, in the other case, she "took complete control of [that victim's] medical care and placement[,] prevent[ed her] family members and others from seeing her[,]" and engaged in "a baroque scheme involving the sale of properties [and] thefts masquerading as donated real estate commissions[.]"[14] *Id.* at 49. However, the instant charges reflect a "more

---

[13] Appellant presents no argument concerning the admission of the limited evidence pertaining to the York County Charges.

[14] Additionally, in the Cumberland County Plea, as part of the police investigation, an individual wore a wire during a conversation with Appellant. *See* Appellant's Brief at 49.

pedestrian character," where Appellant allegedly "acted as a representative payee in order to intercept a 48-year-old's retroactive disability payment and use it for her own purposes." *Id.* at 49-50.

Finally, Appellant argues the trial court abused its discretion in finding the prior bad acts evidence was more probative than prejudicial. Appellant's Brief at 51. She contends the evidence against her "was not overwhelming," and indeed, "the jury never heard any explanation of what **did** ultimately happen to [the Victim's] retroactive payment[.]" *Id.* at 55. Furthermore, Appellant claims, where testimony about the Cumberland County Plea "took up almost 100 pages of" the trial transcript, it produced "a second mini-trial" as to those charges. *Id.* at 53-54. No relief is due.

Here, the trial court found the prior bad acts evidence was admissible to establish a common scheme, plan, or design. In comparing this case to the Cumberland County Plea, the court reasoned:

> What this Court finds distinctive is that [Appellant] holds herself out to the purported victims and their families, as a lawyer and judge or former judge, who created a non-profit organization, namely Mediation Ministries, to assist the elderly and homeless veterans. [Appellant] persuades the elderly or disabled individual to name [her] as joint attorney-in-fact and then eventually becomes the sole attorney-in-fact with power and control over the purported victim's finances.

Trial Ct. Op., 8/30/21, at 5. We agree with the trial court that Appellant's conduct in both cases was "distinctive," where there were so many overlapping or identical details. *See id.*

Furthermore, we disagree with Appellant's reasoning that the common scheme exception applies only to incidents or conduct that is a part of a single criminal act. *See* Appellant's Brief at 47. In support, Appellant cites the dissenting opinion in *Hicks*, 156 A.3d 1114, which has no binding authority. Instead, as stated above, evidence may be admitted under Rule 404(b) to prove a common scheme, plan, or design: (1) to "establish any element of a crime, where intent may be shown through a pattern of similar acts;" or (2) to show the perpetrator's habits, patterns of action, or conduct "to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator[.]" *Saez*, 225 A.3d at 178, 180. Indeed, in affirming the admission of Rule 404(b) evidence in *Hicks*, the majority considered that the evidence "present[ed] a 'virtual signature' for purposes of proving common scheme, intent and identity. They are not mere insignificant details of crimes of the same class, where there is nothing distinctive to separate them from, for example, common street crimes." *Hicks*, 156 A.3d at 1128.

Finally, we disagree with Appellant's contention that the trial court erred in finding the probative value of the evidence outweighed the potential for prejudice. *See* Appellant's Brief at 51. Here, the court found Appellant's "repeated acts" were relevant to the case. Trial Ct. Op., 8/30/21, at 7. As stated above, a court "is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration." *Saez*, 225 A.3d at 180. Accordingly, we do not disturb the court's Rule 404(b) ruling.

J-S26018-22

## V. Discretionary Aspects of Sentence

In her final issue, Appellant challenges the discretionary aspects of her aggregate sentence of two to four years' imprisonment. She avers the imposition of consecutive, aggravated-range sentences, where the offenses were "based on theft of the same money from the same person," resulted in an unduly harsh sentence. Appellant's Brief at 58 (Pa.R.A.P. 2119 statement).

We first consider whether she has properly preserved this issue.

It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.

> . . . To reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code[.]
>
> A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

**Commonwealth v. Mastromarino**, 2 A.3d 581, 585-86 (Pa. Super. 2010) (some citations omitted). Generally, a challenge to the imposition of consecutive sentences, as opposed to concurrent, does not raise a substantial

question. *Id.* at 586, *citing **Commonwealth v. Marts***, 889 A.2d 608, 612 (Pa. Super. 2005). However, a claim, that "the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue[,]" may raise a substantial question. ***Mastromarino***, 2 A.3d at 587.

Here, Appellant filed a timely post-sentence motion, which raised the issues she now presents, as well as a timely notice of appeal. ***See Mastromarino***, 2 A.3d at 585. Additionally, her brief includes a Rule 2119(f) concise statement of the reasons relied upon for allowance of appeal. ***See*** Pa.R.A.P. 2119(f). The Rule 2119(f) statement relies on ***Mastromarino*** and avers the consecutive sentences in this case was excessive in light of the criminal conduct at issue — namely, that the two theft convictions were "based on theft of the same money from the same person[.]" Appellant's Brief at 58.

However, we conclude Appellant has not raised a substantial question invoking this Court's review. Her Rule 2119(f) statement fails to "articulate what particular provision of the [Sentencing C]ode is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm." ***See Mastromarino***, 2 A.3d at 586. Indeed, nowhere in her brief does Appellant address any provision of the Sentencing Code or sentencing guidelines. Furthermore, we disagree that her aggregate two to four-year sentence was "excessive level in light of the criminal conduct at issue[.]" ***See id.*** at 585, 587-88 (reviewing in detail the particular facts of case in

considering whether appellant raised a substantial question in challenging consecutive imposition of 53 sentences, for aggregate term of 25 to 58 years' imprisonment). The trial court extensively addressed its reasons for the sentence: Appellant preyed on elderly individuals, who were unable to manage their finances; she gained access to these victims through a nonprofit organization; her manipulation, dishonesty, and "egregious behavior of deceitfully taking substantial amounts of money" "has significantly worsened the [Victim's life] by leaving [him] barely able to financially support [his] basic needs[;]" the Victim suffered "financial stress, mental stress, and heartache as a result of Appellant's" conduct; and her "actions have caused substantial irreparable harm and ongoing damage to the Victim[.]" Trial Ct. Op., 1/4/22, at 18. The trial court emphasized that Appellant has not returned the Victim's $23,000 funds "nor provided an explanation of what she has done with that money." *Id.* at 3. We decline to find Appellant's total sentence of two to four years falls within the "extreme cases" where the imposition of consecutive sentences supports a substantial question. *See Mastromarino*, 2 A.3d at 587, *citing* **Commonwealth v. Dodge**, 859 A.2d 771 (Pa. Super. 2004) (appellant did raise substantial question in claiming imposition of consecutive sentences, for aggregate 58½ to 124 years' imprisonment, for "numerous, largely property offenses"). *See also Mastromarino*, 2 A.3d at 587 (noting **Dodge**'s own acknowledgment that "its decision is not to be read [as a] rule

that a challenge to the consecutive nature of a standard range sentence always raises a substantial question or constitutes an abuse of discretion").

As we conclude Appellant has failed to argue the violation of any particular Sentencing Code provision and has not raised a substantial question, we do not review the merits of her sentencing challenge. **See Mastromarino**, 2 A.3d at 585.

### VI. Conclusion

In sum, we deny relief on Appellant's challenges to the denial of her Pa.R.Crim.P. 600 motion, the admission of Pa.R.E. 404(b) prior bad acts evidence; and the discretionary aspects of her sentence. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

President Judge Emeritus Stevens joins the memorandum.

Judge Kunselman concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/20/2023