2019 PA Super 362

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                  :            PENNSYLVANIA
                                  :
            v.                    :
                                  :
                                  :
RAFAEL SAEZ                       :
                                  :
            Appellant             :    No. 1967 MDA 2018

Appeal from the Judgment of Sentence Entered October 5, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005489-2017

BEFORE:   SHOGAN, J., STABILE, J., and PELLEGRINI, J.*

OPINION BY SHOGAN, J.:                    **FILED DECEMBER 20, 2019**

Appellant, Rafael Saez, appeals from the October 5, 2018 judgment of

sentence imposed by the Court of Common Pleas of Lancaster County

following a jury trial.  We affirm.

The trial court summarized the facts and procedural history of this case

as follows:

> [Appellant] was convicted of involuntary deviate sexual
> intercourse, indecent assault, and attempted indecent assault
> following allegations made by his step-daughter, J.C. [also
> referred to as "Victim"] that he had been sexually abusing her for
> two years.  In 2013, [Appellant had] moved into his girlfriend's
> home, where she lived with her daughter, J.C., and five sons.  J.C.
> was nine years old when she first remembered her "step-dad
> touch[ing her] in a wrong way." (J.C. Trial Testimony at 69, June
> 25, 2018).  At that time her room was on the second floor of the
> house, though two years later she moved up to an attic bedroom.
> During trial, she testified that the assaults started in the middle
> room, and then...came to the attic." (Id. at 71).  [Appellant]
> groped her "chest" and "where [she] use[s] the bathroom" in the

_____

* Retired Senior Judge assigned to the Superior Court.

room on the middle floor, in her attic bedroom, in the kitchen while she was cooking, and once in the living room. (Id. at 71, 75, 79). [Appellant] would approach J.C. during times when her mother was not home, when she was "at work or out shopping," after sending the boys outside or upstairs. (Id. at 79). He repeatedly came to her attic bedroom when she was alone, took off her underwear, forced her to masturbate him, engaged in oral intercourse with her, and vaginally raped her. (Id. at 72-80). At age thirteen, J.C. found the courage to tell her grandmother [("Grandmother")] about the abuse. [Grandmother] reported the abuse to the police and an investigation began.

Through the preparation for trial, other allegations surfaced about [Appellant], namely from his six-year-old biological daughter [, A.O.,] that she too had been abused by [Appellant] in the attic of J.C.'s home. I held a Tender Years hearing on this matter prior to the trial and found her competent to testify and the allegations similar enough to J.C.'s case to permit them into evidence.

A jury trial began on June 25, 2018. After three days, the jury returned a guilty verdict on all counts.[1] I ordered a presentence investigation, which was returned, and sentencing occurred on October 5, 2018. At that time, I sentenced [Appellant] to a total of 16 to 32 years [of] incarceration. [Appellant] subsequently filed this timely appeal.

Trial Court Opinion, 3/22/19, at 1–2. Both Appellant and the trial court

complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:[2]

---

[1] Appellant was acquitted of rape of a child and found guilty of one count each of: involuntary deviate sexual intercourse ("IDSI"), 18 Pa.C.S. § 3123(a)(6); attempted indecent assault, 18 Pa.C.S. § 901(a); corruption of a minor, 18 Pa.C.S. § 6301(a)(1)(ii); unlawful contact with a minor, 18 Pa.C.S. § 6318(a)(1); endangering the welfare of children, 18 Pa.C.S. § 4304; and indecent exposure, 18 Pa.C.S. § 3127(a); and two counts of indecent assault, 18 Pa.C.S. § 3126(a)(7).

[2] We have reordered the issues for ease of disposition.

I.      Did the trial court abuse its discretion in finding [Appellant's] six year old daughter competent to testify?

II.     Did the trial court abuse its discretion in permitting the Commonwealth to present testimony that [Appellant's] biological daughter had recently accused [Appellant] of abusing her as this evidence was not admissible under any permitted uses in P.A. Rule of Criminal Procedure 404(b)(2)?

III.    Did the trial court abuse its discretion in not permitting [Appellant] to cross-examine the victim's grandmother on how the victim's disclosure to her came about and the entirety of their conversation?

Appellant's Brief at 7.

We address the first two issues in tandem, as they both concern the revelations of six-year-old A.O.  Appellant avers that the trial court abused its discretion in finding A.O. competent to testify.  Appellant's Brief at 20.  He also contends the trial court abused its discretion in permitting the Commonwealth to present testimony that A.O., who did not meet Appellant "until she was 4 years old," revealed that Appellant also sexually abused her. Appellant's Brief at 16; Commonwealth's Notice of Intent to Introduce Evidence of Prior Bad Acts, 5/16/18, at ¶ 4.  The intent to present A.O.'s testimony developed procedurally when initially, the Commonwealth filed a Notice of Intent on April 6, 2018, indicating that it would present the testimony of Appellant's sister, A.S., now age thirty, that Appellant had been adjudicated delinquent of rape and incest relating to A.S. in 2001, when A.S. was twelve years old.  Following a hearing on June 14, 2018, the trial court precluded the

evidence "on the basis that . . . it [was] too remote in time." Trial Court Opinion, 3/22/19, at 5 n.5 (citing N.T., 6/14/18).

Then, on May 16, 2018, the Commonwealth filed a second Notice of Intent to Introduce Evidence of Prior Bad Acts, indicating that it learned that A.O. disclosed to her mother's friend that Appellant had sexually abused her. Notice of Intent to Introduce Evidence of Prior Bad Acts, 5/16/18, at ¶4; N.T., 6/26/18, at 204–205. The Commonwealth alleged that A.O. revealed that Appellant

> touched her vaginal area. She was interviewed at the Lancaster County Children's Alliance on October 16, 2017. During that interview, [A.O.] indicated that [Appellant] would put his hands down her underwear and move his fingers around. She indicated that he did this more than one time. The child had not met [Appellant] until she was 4 years old and began having overnight stays with [Appellant] at that time. This would occur at night when the child was in bed.

Notice of Intent to Introduce Evidence of Prior Bad Acts, 5/16/18, at ¶4. Appellant filed a motion *in limine* that same day requesting, *inter alia*, that the trial court also preclude the testimony of A.O. Appellant urged that such testimony was inadmissible because no charges relating to A.O. had been filed against him,[3] and any probative value of the testimony was outweighed by

---

[3] Pa.R.E. 404(b) "is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court. It encompasses both prior **crimes** and prior **wrongs and acts**, the latter of which, by their nature, often lack 'definitive proof.'" *Commonwealth v. Lockcuff*, 813 A.2d 857, 861 (Pa. Super. 2002) (emphases in original).

the prejudice that would inure to Appellant.  Motion *in Limine*, 5/16/18, at ¶¶ 7–9.

A.O. testified at a competency hearing on June 14, 2018.  Based on the colloquy, the trial court concluded that A.O. was competent to testify.  At the conclusion of the hearing, the trial court ruled: "[T]he probative value [of A.O.'s testimony] does outweigh the potential prejudice [to Appellant].  There is such a degree of similarity [of the abuse], and it will be admissible, but I will give counsel an opportunity to submit proposed cautionary instructions with regard to [A.O.]"  N.T., 6/14/18, at 122.

Appellant argues that A.O. was incompetent to testify because her testimony at the June 14, 2018 hearing was inconsistent.  Appellant's Brief at 21.  Appellant underscores, *inter alia*, that A.O. did not know the date of her birthday, she could not define "oath," and she was unable to elaborate on her use of the word, "stuff."  **Id.** at 22.

The following precepts are applicable herein.  The general rule is that every person is presumed to be a competent witness.  Pa.R.E. 601(a); **Commonwealth v. Judd**, 897 A.2d 1224, 1228 (Pa. Super. 2006).  Before a witness under the age of fourteen may testify, Pennsylvania requires the examination of the witness for competency.  **Commonwealth v. Pukowsky**, 147 A.3d 1229, 1234 (Pa. Super. 2016) (citing **Commonwealth v. Moore**, 980 A.2d 647, 649–650 (Pa. Super. 2009)).  Our standard of review recognizes that "a child's competency to testify is a threshold **legal issue** that

a trial court must decide, and an appellate court will not disturb its determination absent an abuse of discretion." **Commonwealth v. Meredith**, ___ A.3d ___, ___, 2019 PA Super 308, *2 (Pa. Super. filed October 15, 2019) (emphasis in original) (citing **Commonwealth v. Washington**, 722 A.2d 643, 646 (Pa. 1998) (citation omitted)). Our scope of review is plenary. **Meredith**, ___ A.3d at ___, 2019 PA Super at *2 (citing **Commonwealth v. Delbridge**, 859 A.2d 1254, 1257 (Pa. 2004)). "A party who challenges the competency of a minor witness must prove by clear and convincing evidence that the witness lacks 'the minimal capacity . . . (1) to communicate, (2) to observe an event and accurately recall that observation, and (3) to understand the necessity to speak the truth.'" **Meredith**, ___ A.3d at ___, 2019 PA Super at *2; **see also Rosche v. McCoy**, 156 A.2d 307, 310 (Pa. 1959) (competency of minor witness must reveal capacity to communicate, remember events, and reveal a consciousness of the duty to speak the truth).

At the June 14, 2018 competency hearing, A.O. initially was questioned by the Commonwealth and testified, in pertinent part, as follows:

Q [H]ow old are you?

A Six.

Q Six years old. Are you in school?

A Um-hmm.

Q What grade were you in?

A Kindergarten.

Q Okay. Did you finish school or are you still in school?

A Yesterday was my last day in school.

Q Okay. So you finished kindergarten yesterday?

A [Affirmative nod.]

Q What grade are you gonna go into next year?

A First grade.

Q Okay. And what school do you go to?

A Price Elementary.

Q Who was your teacher this year?

A Ms. Hammick [phonetic].

Q Do you know who your teacher is gonna be next year yet?

A No, I'm moving to another school next year.

Q You're gonna go to another school?

A Uh-huh.

Q Okay. Do you know, can you tell us what the difference between a truth and a lie is?

A The truth is you tell the truth.

Q Okay. What's a lie?

A You tell a lie when you don't tell the truth.

Q Okay. And is it good or bad to tell a lie?

A Bad.

Q What would happen if you told your mommy a lie and she found out?

A She would ground me.

Q She would ground you, okay.

[The Commonwealth]: Your Honor, at this time I'd offer her as competent to testify.

THE COURT: Any questions on competence?

[Defense Counsel]: At this time, no, Your Honor.

N.T., 6/14/18, at 103–104.

When A.O. appeared as a witness on the first day of trial, June 25, 2018, the trial court again conducted an extensive colloquy with her in chambers. N.T., 6/25/18, at 4–7. In response to questioning by the trial court, A.O. told the trial court that she had recently lost a tooth, and she related the details. *Id.* at 4. A.O. then discussed her prior school year in kindergarten, and she again identified her teacher by name. *Id.* at 5. A.O. also described her favorite activities at school. *Id.* at 6. Once again, and in response to the trial court, A.O. demonstrated that she knew the difference between the truth and a lie, as follows:

THE COURT: Do I have a hat on my head?

[A.O.]: No.

THE COURT: If you said, Judge, you have a hat on your head, would that be the truth or would that be a lie?

[A.O.]: A lie.

THE COURT: Okay. Now, you see this tie? My wife bought this for me. Is this tie red?

- 8 -

[A.O.]: No.

THE COURT: So if I said this tie is red, am I telling the truth or a lie?

[A.O.]: A lie.

THE COURT: Okay. And I have these scissors, and I'm very careful with scissors. You need to be careful with scissors. The handle on the scissors I'm going to say is blue. Is that the truth or a lie?

[A.O.]: Truth.

THE COURT: Okay. Commonwealth?

[THE COMMONWEALTH]: Your Honor, I would just let the record reflect the handle of the scissors is blue, your tie is green, and you are not wearing a hat.

N.T., 6/25/18, at 6–7.

Defense counsel then questioned A.O. When counsel asked A.O. what an oath is, A.O. did not respond. However, when defense counsel asked, "[I]f you were to say, I promise to tell the truth, do you know what that means, what that would mean?" A.O. responded, "I tell the truth for a long time." N.T., 6/25/18, at 8. Defense counsel then asked fact questions, A.O. correctly responded, and counsel asked, "Do you know what you were brought here to talk about?" *Id.* at 9. A.O. stated, "To talk about stuff." *Id.* When counsel asked, "Do you know what kind of stuff?" A.O. shook her head no. *Id.*

Based on this testimony, *inter alia*, that A.O. could not define an "oath" and that A.O. could not identify the date of her birthday other than that it

occurred during kindergarten,[4] Appellant asserted at trial and maintains on appeal that A.O. was not competent to testify. N.T., 6/25/18, at 11; Appellant's Brief at 23.

In rejecting Appellant's claim that it abused its discretion in ruling that A.O. was a competent witness, the trial court stated the following:

> Discretion lies with the trial judge to make the ultimate decision as to competency[,] and he must determine whether "the child posseses the capacity to communicate, including both the ability to understand questions and to frame and express intelligent answers; the mental capacity to observe the occurrence itself and the capacity of remembering what it is that the child is called upon to testify about; and the consciousness of the duty to speak truthfully." Commonwealth v. McMaster 666 A.2d 724 (1995); see also Commonwealth v. Barnosky, 400 A.2d 168 (1979) (Determination of competence is left in the sound discretion of the trial judge who has the opportunity to observe the testimony of the child). In Commonwealth v. Pankra[]z, a four-year -old child was found competent where leading questions showed that she understood the difference between the truth and a lie and understood her duty to tell the truth, the proponent of her testimony established her ability to observe and remember the event, and she was able to understand questions and communicate intelligent answers. Commonwealth v. Pankraz, 554 A.2d 974 (1989).
>
> * * *
>
> Following both [competency hearings], I found A.O. competent to testify. I noted some concern with her understanding of a "promise" or oath to tell the truth but her response to questions and her ability to distinguish between the truth and a lie made it so this slight concern did not disqualify her. This determination was within my sound discretion, as the trial court judge, and

---

[4] Although A.O. knew her age, she stated she could not remember her birth date. N.T., 6/25/18, at 5. When questioned further, A.O. stated it was when she was in kindergarten. *Id.* The record reflects that her birthday is during the school year. Order, 6/22/18.

should not be disturbed "absent a clear abuse of that discretion." McMaster 666 A.2d 724, 727 (citing Commonwealth v. Hart, 460 A.2d 745, 747 (1983)).

Trial Court Opinion, 3/22/19, at 6–8.

Appellant was given ample latitude to cross-examine A.O. with respect to her ability to understand the difference between the truth and a lie. At the initial hearing on June 14, 2018, defense counsel asked no questions. N.T., 6/14/18, at 103–113. On the first day of trial, A.O. demonstrated, through questioning by the trial court and cross-examination by Appellant in chambers, that she understood those concepts, as she had at the prior competency hearing. Appellant's emphasis on the definition of "oath" is not an age-appropriate concept, but A.O. clearly was able to demonstrate she understood the duty to tell the truth. Trial Court Opinion, 3/22/19, at 7 n.6, 8; N.T., 6/25/18, at 4–9. When A.O. took the stand on the second day of trial, she revealed the ability to perceive and remember the abuse events and understood and communicated candid, intelligent answers about the abuse. N.T., 6/26/18, at 208–213. The trial court did not abuse its discretion in finding A.O. competent to testify as a witness in this case.

Appellant also argues that A.O.'s testimony was not admissible "for any purpose." Appellant's Brief at 18. He contends the allegations by A.O. were dissimilar from Appellant's abuse of J.C., the victim herein. *Id.* at 19. Appellant suggests that the only similarity between the allegations A.O. made

against Appellant and the crimes against J.C. was that they were "simply of the same general class or category of crime: sexual in nature." ***Id.***

This allegation of error challenges the admission of evidence at trial. We have stated:

> "Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." ***Commonwealth v. Russell***, 938 A.2d 1082, 1091 (Pa. Super. 2007) (citation omitted). An abuse of discretion is more than a mere error of judgment; rather, an abuse of discretion will be found when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ***Commonwealth v. Busanet***, 572 Pa. 535, 817 A.2d 1060, 1076 (2002) (citation and quotation omitted).

***Pukowsky***, 147 A.3d at 1233.

As noted *supra*, when the Commonwealth filed its second Notice of Intent to Introduce Evidence of Prior Bad Acts, indicating that it learned that A.O. disclosed that Appellant also had sexually abused her, Appellant filed a motion *in limine* that same day requesting, *inter alia*, that the trial court also preclude the testimony of A.O., as it had ruled regarding the testimony of Appellant's sister. Appellant contended that such testimony was inadmissible, and any probative value of the testimony was outweighed by the prejudice that would inure to Appellant. Motion in Limine, 5/16/18, at ¶¶ 7–9.

When reviewing the denial of a motion *in limine*, we apply an evidentiary abuse-of-discretion standard of review. "It is well-established that the admissibility of evidence is within the discretion of the trial court, and such

rulings will not form the basis for appellate relief absent an abuse of discretion." *Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014). Indeed:

> "When a trial court comes to a conclusion through the exercise of its discretion, there is a heavy burden on the appellant to show that this discretion has been abused." *Commonwealth v. Eichinger*, 591 Pa. 1, 915 A.2d 1122, 1140 (2007) (citation omitted). An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power. *Id.*

*Commonwealth v. Gill*, 206 A.3d 459, 466 (Pa. 2019). A determination that a trial court abused its discretion in making an evidentiary ruling "may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Hoover*, 107 A.3d at 729 (internal quotation marks omitted).

In ruling on the admissibility of A.O.'s testimony, the trial court examined Pa.R.E. 404(b), and Appellant posits that A.O.'s testimony was not permitted pursuant to the rule. We examine its applicability herein as interpreted through case law.

> Rule 404(b) of the Pennsylvania Rules of Evidence provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E., Rule 404(b)(1), 42 Pa.Cons.Stat.Ann. However, "evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, intent, preparation, plan, or knowledge...." Pa.R.E., Rule 404(b)(2), 42 Pa.Cons.Stat.Ann. Therefore, evidence of other

crimes or acts may be admitted if such evidence proves "a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others." Leonard Packel and Anne Bowen Poulin, *Pennsylvania Evidence* § 404–9(a) (2d Ed.1999). A common scheme may be relevant to establish any element of a crime, where intent may be shown through a pattern of similar acts. *See Commonwealth v. Strong*, 825 A.2d 658, 665 (Pa.Super.2003), *appeal denied*, 577 Pa. 702, 847 A.2d 59 (2004), *cert. denied*, 544 U.S. 927, 125 S.Ct. 1652, 161 L.Ed.2d (2005).

The degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under this exception. *See Commonwealth v. Luktisch*, 451 Pa. Super. 500, 680 A.2d 877, 879 (1996) (finding testimony of prior sexual abuse upon other children in the same family relevant to demonstrate a common scheme); *Commonwealth v. Smith*, 431 Pa. Super. 91, 635 A.2d 1086, 1089–1090 (1993) (holding evidence of prior crimes was admissible to show a recurring sequence of acts by defendant).

Furthermore, the importance of the intervening time period "is inversely proportional to the similarity of the crimes in question." *Commonwealth v. Miller*, 541 Pa. 531, 548–550, 664 A.2d 1310, 1319 (1995).

*Commonwealth v. Einhorn*, 911 A.2d 960, 967 (Pa. Super. 2006).

Thus, the "degree of similarity" is a hallmark. The longer the time between the crimes, the more similar the crimes need to be. *Einhorn*, 911 A.2d at 967. Here, the trial court pointed out that the attacks on A.O. and J.C. "appear to overlap in time.[4]"

[4] The exact dates of the abuse of A.O. are unclear. But she and her mother testified that A.O. was four or five when she began staying overnight with [Appellant]. It was around this time that A.O. began to wet the bed, a typical indication of abuse. U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, ADMINISTRATION FOR CHILDREN AND FAMILIES, Parenting a Child or Youth Who Has Been Sexually Abused: A Guide for Foster and Adoptive Parents (December 2018)

- 14 -

https://www.childwelfare.gov/pubPDFs/f_abused.pdf). A.O. was born in . . . 2011 with the abuse likely occurring between September and November 2016. J.C.'s original report to the police occurred on March 30, 2017.

Trial Court Opinion, 3/22/19, at 4 n.4 (some internal citations omitted).

The trial court concluded that A.O.'s testimony was admissible as evidence proving a common scheme, plan or design. Pa.R.E. 404(b)(2).[5] In support of its decision, the trial court stated as follows:

Despite the slight difference in victim age,[2] the similarities between the incidents of abuse merited inclusion under Pa.R.E. 404(b)(2). Both girls were young, away from protective family members,[3] in their bedrooms and vulnerable at the time [Appellant] abused them. Indeed, these attacks appear to overlap in time, further demonstrating a lack of accident. The probative value of this evidence far outweighed the potential unfair prejudice. The assault on [Appellant's] biological daughter demonstrated the natural course of events in [Appellant's] life and that of his family. Like in [Commonwealth v.] Judd, [897 A.2d 1224 (Pa. Super. 2006,)] the testimony here certainly prejudiced [Appellant], but it did not do so unfairly.

> [2] The victim in this case, J.C. was between the ages of 9 and 12 while [Appellant] abused her. A.O. was five when she told her mother about the abuse.
>
> [3] In both cases, the abuse occurred when the child's mother was not in the home. See J.C. Trial Testimony at 75 ("Q: Where was your mom when these things would happen? A: She would be at work or grocery shopping.").

_____

[5] Pa.R.E. 404(b)(2) provides: "(2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case[,] this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice."

- 15 -

Trial Court Opinion, 3/22/19, at 4–5 (some footnotes omitted).

Appellant also argues that A.O.'s testimony substantially prejudiced him by suggesting "to the jury that [Appellant] had a propensity to commit crimes of a specific class: sexual crimes. The claims did not have any probative value to them, and even if they did, it was substantially outweighed by the prejudice to [Appellant]." Appellant's Brief at 20. The trial court addressed this claim as follows:

> [I]n order to mitigate a claim of undue prejudice, I provided specific instructions to the jury regarding this evidence:
>
>> Now you did hear testimony which accused [Appellant] of improper conduct for which he is not on trial. I'm speaking of the testimony yesterday afternoon by [A.O.]. This evidence came before you for a limited purpose. That was for the purpose of showing motive, intent, absent [sic] of mistake or accident or common scheme. This evidence must not be considered by you in any way other than for one or more of these purposes. You must not regard this evidence as showing that [Appellant] is a bad person or of bad character or has criminal tendencies from which you may be inclined to infer guilt in this case. To do otherwise, again, would be a violation of your oaths as jurors.

Trial Court Opinion, 3/22/18, at 5 (citing N.T., 6/27/18, at 306–307). The trial court continued, "This instruction was also given just before A.O. testified, mitigating the possibility of unfair prejudice. Based on the similarities in the abuse and the nearness of the events in time, I determined that, with these appropriate instructions, the probative value of A.O.'s testimony outweighed the prejudice to [Appellant]." Trial Court Opinion, 3/22/19, at 5.

- 16 -

When ruling upon the admissibility of evidence under the common-plan exception, the trial court must examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive:

> Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. Tyson*, 119 A.3d 353, 359 (Pa. Super. 2015).

In both instances, the victims Appellant abused were young children in a filial relationship with Appellant. Further, the instances of abuse toward both children took place close in time with one another. *See Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa. Super. 2010) (holding evidence of the defendant's prior sexual assault was admissible under common-scheme exception despite nearly ten-year gap between periods of abuse, where victims were of similar age and both were daughters of the defendant; the defendant initiated contact with each victim during overnight visits in his

apartment; and assaults occurred in bed at night); ***Commonwealth v. Luktisch***, 680 A.2d 877 (Pa. Super. 1996) (holding common-scheme exception justified admission of testimony regarding the defendant's previous sexual assaults despite six-year lapse between periods of abuse, where three victims were nearly same age, victims were either daughter or step-daughter[6] of the defendant and lived with him when acts occurred; and pattern of molestation was similar with respect to two victims).

In balancing the probative value of the evidence against its prejudicial impact, this Court has opined that a trial court "is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration." ***Commonwealth v. Golphin***, 161 A.3d 1009, 1022 (Pa. Super. 2017), *appeal denied*, 170 A.3d 1051 (Pa. 2017). We conclude the trial court did not abuse its discretion in permitting A.O.'s testimony concerning her abuse by Appellant.

Appellant's final issue avers that the trial court abused its discretion in precluding Appellant from cross-examining Grandmother, concerning how J.C.'s disclosure of abuse by Appellant occurred. Appellant's Brief at 23. We repeat that we are precluded from disturbing the trial court's rulings regarding the admissibility of evidence absent an abuse of discretion because such

---

[6] We reject Appellant's suggestion that the fact that A.O. was his biological daughter and J.C. was merely a step-daughter negated any degree of similarity. Appellant's Brief at 18. Both of these relationships represented Appellant as an authority figure to his victims.

questions are left to the sound discretion of the trial court. **Pukowsky**, 147

A.3d at 1233.

On May 24, 2018, following the filing of the Commonwealth's motion to

admit Grandmother's testimony under the Tender Years Exception, 42 Pa.C.S.

§ 5985.1, the trial court entered the following order:

> IT IS HEREBY ORDERED that the hearsay statements made by J.C., . . . to [Grandmother] are admissible as substantive evidence at trial insofar that the statements are limited to what J.C. specifically disclosed to [Grandmother] regarding [Appellant's] actions during the alleged abuse. [Grandmother] may also testify generally to the fact that J.C. made a disclosure on the date of March 31, 2017.

Order, 5/24/18, at 1 (internal footnote omitted).

At the start of trial, defense counsel renewed his request to cross-

examine Grandmother about comments she made to J.C. at the time of the

sexual-abuse disclosure. N.T., 6/25/18, at 12. The trial court responded:

> For the record, my ruling was limited in a way that stopped all that testimony from [Grandmother] and [J.C.'s] . . . responses to the questioning because I felt it was outside proper tender years. So my ruling is limited to, there was an incident, the alleged victim went to her room crying, [Appellant] was thrown out of the house or left the house, [Grandmother] went upstairs, and [Grandmother] then wants to know what is happening, at which point [J.C.] reveals that there had been some improper conduct, so then [Grandmother] calls the police, and then that is the end of the line.
>
> If you cross-examine her, you wish to cross-examine her on the other stuff, it opens the door for other stuff to come in, and [J.C.'s] responses. I don't think that works for either side. So your objection is noted on the record, but I'm still going to stick by, that is going to be the limitation.

- 19 -

*Id.* at 13–14. The "other stuff" to which the trial court referred was the testimony concerning Appellant's 2001 adjudication of rape of his sister, among other things.

The trial court stated the following in response to this issue:

> The testimony by [Grandmother] was limited to establishing a timeline of events which culminated in [J.C.] reporting the abuse to the police. (Tender Years Vol. IV at 13). This limitation served to protect both [Grandmother] from unnecessary embarrassment and to protect [Appellant] from the inadmissible content of the conversation [J.C.] had with [G]randmother. (Tender Years II, 84, May 23, 2018). At the initial Tender Years hearing, [Grandmother] described in-depth the conversation where J.C. revealed the abuse. Much of the conversation was dedicated to [Grandmother] describing the abuse she herself had suffered as a child at the hands of an older male relative. (Tender Years Vol. II at 66-69, May 23, 2018). [Grandmother's] anger at her abuser and at [Appellant] was very clear throughout her testimony. She used words like "faggot," "loser," and "bum" to describe both men. She testified that she "wanted to kill [Appellant]" and "really wanted to hurt him." (Tender Years Vol. II at 70-71). My order limiting [Grandmother's] testimony served several goals, one of which was to protect [Appellant] by preventing the jury from hearing this outpouring of hatred and anger. The testimony at trial removed the content of [Grandmother's] conversation with [J.C.] and allowed [Grandmother] to testify simply to the fact that J.C. revealed a claim of some type of abuse to begin the timeline on the course of the police investigation.

Trial Court Opinion, 3/22/19, at 8–9.

Appellant implies that the court's ruling prevented him from asking J.C. whether Grandmother's comments influenced J.C.'s disclosure. Appellant's Brief at 28–29. As the Commonwealth points out, defense counsel, while remaining within the confines of the trial court's ruling, could have questioned

J.C. herself whether Grandmother's revelations prompted J.C.'s admission about Appellant's abuse.  Commonwealth's Brief at 25–26.

We agree with the trial court's explanation.  Our review of the record reinforces and supports our conclusion that the trial court did not abuse its discretion in limiting Grandmother's testimony.  Accordingly, finding no abuse of discretion, we are compelled to affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/20/2019