J-S26021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GERALDO MALDONADO | : | |
| | : | |
| Appellant | : | No. 1453 MDA 2023 |

Appeal from the Judgment of Sentence Entered September 6, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000195-2022,
CP-36-CR-0005381-2021

BEFORE: PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 01, 2024**

Appellant, Geraldo Maldonado, appeals from the September 6, 2023 judgment of sentence[1] entered in the Court of Common Pleas of Lancaster County that imposed an aggregate sentence of 24 to 52 years' incarceration after a jury convicted Appellant of multiple sexual offenses committed against minor children, as detailed *infra*.[2]  We affirm.

_____

[1] In his notice of appeal, Appellant purports to appeal from both his May 28, 2023 conviction and his September 6, 2023 judgment of sentence.  It is well-settled that Appellant's appeal properly lies from his judgment of sentence. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (stating, "[i]n a criminal action, [an] appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions"), *appeal denied*, 800 A.2d 932 (Pa. 2002).

[2] We note that, on October 12, 2023, Appellant filed a notice of appeal at each of the two trial court dockets.  Each notice of appeal listed both trial court docket numbers.  Pursuant to Pennsylvania Rule of Appellate Procedure 341,

The trial court summarized the factual and procedural history as follows:

By criminal information docketed [at trial court docket number] CP-36-CR-0000195-2022 [("CR-195-2022")], Appellant was charged with allegedly having committed the offenses of rape of a child, aggravated indecent assault of a child, unlawful contact with a minor [(relating to sexual offenses)], corruption of minors [(relating to sexual offenses)], endangering the welfare of children [(by parent, guardian, or other person supervising the welfare of a child under 18 years of age)], indecent assault[ - complainant less than 13 years of age], and incest[ - complainant less than 13 years of age.[3]] Said charges stem from alleged criminal sexual

when a single order "resolves issues arising on more than one docket[,] separate notices of appeal must be filed." Pa.R.A.P. 341 at *Official Comments*; *see also Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018), *overruled in part by Commonwealth v. Young*, 265 A.3d 462, 477 and n.19 (Pa. 2021) (reaffirming *Walker* but holding that Pennsylvania Rule of Appellate Procedure 902 permits an appellate court, in its discretion, to allow correction of a Rule 341 error); *see also* Pa.R.A.P. 902(a) (effective May 18, 2023) (stating, "[a] notice of appeal must be filed in each docket in which the order has been entered"). This Court recently held that it is of no consequence that a notice of appeal contains more than one trial court docket number, so long as the party files a notice of appeal at each of the trial court dockets. *Commonwealth v. Johnson*, 236 A.3d 1141, 1148 (Pa. Super. 2020) (*en banc*), *appeal denied*, 242 A.3d 304 (Pa. 2020); *see also Commonwealth v. Larkin*, 235 A.3d 350, 352 (Pa. Super. 2020) (*en banc*), *appeal denied*, 251 A.3d 773 (Pa. 2021). In other words, for purposes of perfecting an appeal, this Court is concerned that a notice of appeal is filed at each trial court docket, not whether the notice of appeal contains more than one trial court docket number.

Here, the record reveals that Appellant filed a notice of appeal at each trial court docket. The certified record of each trial court docket was then forwarded to this Court for purpose of appeal. This Court assigned only one docket number to Appellant's appeal. Based upon our review of Rule 341, Rule 902, *Walker*, and its progeny, we conclude that Appellant perfected two appeals from the September 6, 2023 judgment of sentence entered at each trial court docket.

[3] 18 Pa.C.S.A. §§ 3121(c), 3125(b), 6318(a)(1), 6301(a)(1)(ii), 4304(a)(1), 3126(a)(7), and 4302(b)(1), respectively.

conduct between Appellant and his biological child in Columbia Borough, Lancaster County, Pennsylvania between the years of 2011 and 2015.

By criminal information docketed [at trial court docket number] CP-36-CR-0005381-2021 [("CR-5381-2022")], Appellant was charged with allegedly having committed the offenses of aggravated indecent assault of a child, indecent assault[ - complainant less than 13 years of age] (two counts), endangering the welfare of children [(by parent, guardian, or other person supervising the welfare of a child under 18 years of age)] (two counts), corruption of minors [(by any act)] (two counts), and unlawful contact with a minor [(relating to sexual offenses)] (two counts).[4] Said charges stem from alleged criminal sexual conduct between Appellant and two minor children of Appellant's paramour in Lancaster City, Lancaster County, Pennsylvania between the years of 2005 and 2008. It was alleged that Appellant's actions occurred when he was in a caregiving role for the involved minor children.

Appellant proceeded to trial before a jury on May 15, 2023. At the conclusion thereof, on May 17, 2023, Appellant was found guilty of all charged offenses. Following completion of a pre[-]sentence investigation [("PSI")] report, Appellant appeared before [the trial] court for sentencing on September 6, 2023. At such time, Appellant was sentenced as follows:

[**CR-195-2022:**]

Count 1 - rape of a child - not less than 10 nor more than 20 years' incarceration.

Count 2 - aggravated indecent assault of a child - not less than 10 nor more than 20 years' incarceration.

Count 3 - unlawful contact with a minor - not less than 8 nor more than 16 years' incarceration.

Count 4 - corruption of minors - not less than 1 nor more than 5 years' incarceration.

---

[4] 18 Pa.C.S.A. §§ 3125(b), 3126(a)(7), 4304(a)(1), 6301(a)(1), and 6318(a)(1), respectively.

Count 5 - endangering the welfare of children - not less than 1 nor more than 5 years' incarceration.

Count 6 - indecent assault - deemed to merge with Counts 1 and 2.

Count 7 – incest - not less than 3 nor more than 7 years' incarceration.

[**CR-5381-2021:**]

Count 1 - aggravated indecent assault of a child - not less than 10 nor more than 20 years' incarceration.

Count 2 - indecent assault - not less than 1 nor more than 5 years' incarceration.

Count 3 - indecent assault - not less than 1 nor more than 5 years' incarceration.

Count 4 - endangering the welfare of children - not less than 1 nor more than 5 years' incarceration.

Count 5 - endangering the welfare of children - not less than 1 nor more than 5 years' incarceration.

Count 6 - corruption of minors - not less than 1 nor more than 2 years' incarceration.

Count 7 - corruption of minors - not less than 1 nor more than 2 years' incarceration.

Count 8 - unlawful contact with a minor - not less than 1 nor more than 5 years' incarceration.

Count 9 - unlawful contact with a minor - not less than 1 nor more than 5 years' incarceration.

[At CR-195-2022, the sentence imposed at] Count 7 was ordered to run consecutive[ly] to [the sentence imposed at] Count 1. All remaining [sentences imposed at CR-195-2022] were [set to run concurrently to] Count 1. [At CR-5381-2021, the sentence imposed at] Count 2 was ordered to run consecutive[ly] to [the sentence imposed at] Count 1. All remaining [sentences imposed at CR-5381-2021] were [set to run concurrently to] Count 1. The sentences imposed [at CR-5381-2021] were ordered to run consecutive[ly] to the sentences imposed [at CR-195-2022]. The [aggregate sentence was] not less than 24 nor more than 52

years' incarceration. Appellant was ordered to pay the costs of prosecution and restitution as a condition of sentence in the amount of $884[.00 at CR-195-2022] according to a schedule as determined by his paroling authority. Appellant was recommended for participation in [] all relevant programming offered by the [Pennsylvania] Department of Corrections and for any conditions deemed appropriate by the Pennsylvania Board of Probation and Parole. Appellant [was found] not eligible for participation in the recidivism risk reduction incentive [program], motivational boot camp program, state drug treatment program, or short sentence parole program[,] and the [] Commonwealth did not waive any such ineligibility. Appellant [was found to be] eligible for reentry services. In addition, following a hearing prior to the imposition of sentence, Appellant was found to be a sexually violent predator [("SVP")] and subjected to the applicable lifetime notification and registration requirements [under Subchapter H of the Sex Offender Registration and Notification Act ("SORNA II"), codified at 42 Pa.C.S.A. §§ 9799.11 to 9799.40].

Appellant filed a timely post-sentence motion on September 13, 2023, which was denied by [the trial court on] September 15, 2023.

Trial Court Opinion, 12/12/23, at 1-4 (extraneous capitalization and original footnotes omitted). This appeal followed.[5]

Appellant raises the following issues for our review:

[1.] Did the trial court commit [a] manifest abuse of discretion when it consolidated for trial [CR-5381-2021 and CR-195-2022] when the evidence in each of the offenses would be inadmissible in a separate trial for the other and the offenses charged are not based on the same act or transaction?

[2.] Did the trial court abuse its discretion when allowing out of court hearsay statements made by [Appellant's biological daughter to one of Appellant's paramour's minor children], Karon Melton, [a forensic interviewer,] and [Jessica Higgins,

---

[5] Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

a detective with the Lancaster Bureau of Police ("Detective Higgins")] when the statements do not establish sufficient *indicia* of reliability, were not spontaneous, were not consistent, and the mental state of the declarant was not reliable?

Appellant's Brief at 4.

Appellant's first issue challenges the trial court's order granting the consolidation of Appellant's two criminal informations, CR-195-2022 and CR-5381-2021, into a single trial. *Id.* at 8-10.

It is well-settled that the decision to consolidate separate criminal informations rests within the sole discretion of the trial court, and this Court will only reverse for "a manifest abuse of discretion or [where there is] prejudice and clear injustice to the defendant." **Commonwealth v. Shackelford**, 293 A.3d 692, 701 (Pa. Super. 2023), *relying on* **Commonwealth v. Robinson**, 864 A.2d 460 (Pa. 2004), *appeal denied*, 313 A.3d 150 (Pa. 2024); *see also* **Commonwealth v. Lively**, 231 A.3d 1003, 1006 (Pa. Super. 2020). "It is the [defendant's] burden to establish prejudice." **Shackelford**, 293 A.3d at 701.

Pennsylvania Rule of Criminal Procedure 582 provides, in pertinent part, as follows:

### Rule 582.  Joinder - Trial of Separate Indictments or Informations

**(A) Standards**

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1). Pennsylvania Rule of Criminal Procedure 583 provides that a trial court "may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. "Prejudice, for purposes of Rule 583, must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him[, or her,] to a crime." ***Shackelford***, 293 A.3d at 701 (citation and original quotation marks omitted). Prejudice, for purpose of Rule 583, occurs when "the evidence tend[s] to convict the [defendant] only by showing his[, or her,] propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence." ***Id.*** (citation and original quotation marks omitted).

Reading these rules together, our Supreme Court established the following test for determining whether joinder of separate criminal informations is appropriate:

the [trial] court must [] determine: (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Id.* (citation and original brackets omitted).

Here, Appellant argues that the trial court erred in consolidating his two criminal informations because the evidence supporting each respective criminal information was not admissible in a separate trial for the other criminal information. Appellant's Brief at 8-9. Specifically, Appellant contends evidence that he raped his biological daughter and committed acts of incest against her would be inadmissible in a trial concerning the sexual abuse committed against his paramour's daughters, who testified only that Appellant touched their butts and that they never saw his penis. *Id.* at 8. Conversely, Appellant contends evidence that he touched his paramour's daughters in a sexual manner would be inadmissible in a trial concerning the rape and incest committed against his biological daughter. *Id.* at 9. Appellant argues that the "[e]vidence provided by [the paramour's daughters] only acts to lead the jury to believe that, because Appellant sexually assaulted them, he must have sexually assaulted [his biological daughter] as well." *Id.* Appellant further argues that "[t]here was no common scheme or plan as [one of the paramour's daughters] was touched outside of her clothes in the kitchen of the home[, the other daughter] was touched under her clothes in the bedroom[,] and years later [Appellant's biological daughter] was raped by her father." *Id.* Appellant therefore concludes that consolidated trials on his two criminal informations allowed the Commonwealth to introduce evidence of mere criminal propensity activity which, in turn, injected great prejudice into the proceedings that "vastly outweighed" the probative value. *Id.* at 8.

In explaining its decision to consolidate Appellant's criminal informations, the trial court stated,

the [trial] court found the allegations regarding the three minor victims [] to be of a highly similar nature, despite Appellant's argument to the contrary. The three minor victims were either Appellant's biological daughter or daughters of his paramour. The assaults occurred when the children were of a similar age, all between four and ten years of age. The assaults occurred when Appellant was in a position of sole care and at a time when the minor children were vulnerable and outside of the presence of protective family members. The assaults [] occurred at the residence of Appellant, although he resided at two separate locations during the relevant time period. The progression of the assaultive behavior was also quite similar, in that Appellant would start by groping a child outside of [her] clothing, progress to touching the child's genitals under [her] clothing, then digitally penetrating the vagina of the victim. Thereafter, Appellant would "hump" the victims and eventually attempted to have sexual intercourse with his biological daughter. In addition, although there is some uncertainty as to the exact dates of Appellant's criminal actions, the [trial] court found the various assaults were not of a remote nature. It is noted that the incidents involving his paramour's children occurred between 2005 and 2008. The incidents involving his biological daughter occurred between 2011 and 2015. Accordingly, there existed as little as three years variance in Appellant's actions, which [the trial] court weighed against the substantial similarities as noted herein.

In addition to the evidence demonstrative of a common scheme or plan, the facts presented in this matter are interwoven in a tangled web such that trying the cases together was necessary to demonstrate for the jury the history and natural development of the facts. As noted by [] the Commonwealth, Appellant initially assaulted the minor daughters of his paramour. When [the] relationship [between Appellant and his paramour] ended and Appellant was precluded from contact with those minor victims, he began to assault his biological daughter. In addition, there was simply no manner for the Commonwealth to demonstrate the disclosures made by the minor victims had the criminal informations been severed. In this matter, the minor daughters of Appellant's paramour were aware that each had been assaulted but they made no disclosure of such. Following the assault of

Appellant's biological daughter, in a time of crisis, they found portions of a journal detailing [the biological daughter's] abuse. It was at this time that the disclosures were made. Accordingly, such evidence was highly relevant and necessary for the Commonwealth to adequately explain the delayed reporting and credibility of the minor victims.

. . .

Next, we must address whether the evidence related to the separate incidents was incapable of separation by the jury. . . . Here, the incidents occurred between 2005 and 2015, involved different victims, and took place at different locations. Therefore, there is no basis to determine that the jury suffered confusion from the presentation of the evidence related to the various offenses. In addition, it is noted that [the trial] court, in both its oral instructions to the jury and on the written verdict slip, created clear delineation between the different counts and victims to aid the jury in understanding the parameters of [the] alleged incidents.

Finally, we conclude that Appellant suffered no prejudice from the consolidation of these matters. [The] evidence of Appellant's various sexual assaults of his youthful biological daughter and [the] daughters of his paramour did not simply show Appellant's propensity to commit crimes nor was the evidence unnecessarily cumulative[. R]ather[,] it was a series of distinct instances of similar criminal conduct. The evidence of such criminal activity and the disclosure of such activity was interwoven in a tangled web which cannot fairly be severed and tried in separate trials. Accordingly, Appellant is unable to demonstrate any unfair prejudice.

Trial Court Opinion, 12/12/23, at 8-11 (extraneous capitalization).

Upon review, we concur with the trial court, and the record supports, that the evidence of each of Appellant's offenses would have been admissible in a separate trial of the other offenses, there was no danger of confusion by the jury, and Appellant failed to establish prejudice as a result of the consolidation of his criminal informations.

The determination that evidence of each of Appellant's offenses would have been admissible in a separate trial of the other offenses aligns with the application of our evidentiary rules to the circumstances presented in this case. Pennsylvania Rule of Evidence 404(b) provides, in pertinent part, as follows:

**Rule 404.  Character Evidence; Other Crimes, Wrongs, or Acts**

. . .

**(b) Other Crimes, Wrongs, or Acts.**

(1) *Prohibited Uses*.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses*.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1) and (2).

It is well-established that while "[e]vidence of distinct crimes is inadmissible solely to demonstrate a defendant's criminal tendencies[, s]uch evidence is admissible[] to show a common plan, scheme[,] or design embracing commission of multiple crimes, [] so long as proof of one crime tends to prove the others." ***Commonwealth v. Keaton***, 729 A.2d 529, 537 (Pa. 1999); ***see also Commonwealth v. Saez***, 225 A.3d 169, 178 (Pa. Super. 2019) (stating, "evidence of other crimes or acts may be admitted if such evidence proves a common scheme, plan[,] or design embracing

commission of two or more crimes so related to each other that proof of one tends to prove the others" (original quotation marks and citation omitted)), *appeal denied*, 234 A.3d 407 (Pa. 2020). "The degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under this exception." **Saez**, 225 A.3d at 178. Moreover, "the importance of the intervening time period is inversely proportional to the similarity of the crimes in question." **Id.** (citation and original quotation marks omitted). "The longer the time between the crimes, the more similar the crimes need to be." **Id.**

Upon review, we concur with the trial court, and the record supports, that the evidence supporting each of the criminal informations was admissible in the trial of the other criminal information because the evidence supporting each criminal information showed a "common plan or design" to abuse minor female children who were under Appellant's care and control. One of the paramour's daughters testified that Appellant sexually abused her by inappropriately touching her "butt" while she and Appellant were at home. N.T., 5/16/23, at 330-331. The touching occurred while she was clothed and always occurred when no other adult, *i.e.*, her mother, was present. **Id.** at 332. The second of the paramour's daughters explained that Appellant touched her by rubbing her body while she was clothed and progressed to placing his hands under her clothing. N.T., 5/17/23, at 376-377. The daughter also stated that, while placing his hands under her clothing, Appellant would rub and touch her "private parts" and eventually started to

digitally penetrate her. *Id.* at 375, 380. Finally, the daughter stated that Appellant would lay on top of her and "dry hump" her. *Id.* at 375. The daughter said that all of these events occurred at home while her mother was not present. Appellant's biological daughter testified that Appellant's sexual assaults started with Appellant touching her "butt." N.T., 5/16/23, at 259. Appellant progressed to touching his biological daughter "below" and also placing his hands underneath her clothes. *Id.* at 257. Appellant's biological daughter explained that Appellant would lay with her in bed, touching her vagina, and that this continued until Appellant removed his clothing and digitally penetrated his biological daughter. *Id.* at 260-262. Ultimately, Appellant inserted his penis into his biological daughter's vagina during one of the assaults. *Id.* at 264. Appellant's sexual assaults on his biological daughter occurred within the family home, outside the presence of an adult. *Id.* at 257.

As found by the trial court, the record supports that Appellant's sexual assaults of the three minor female children were all of a "highly similar nature" such that the actions constitute a common scheme or plan. The three children were all of a similar age when the sexual assaults occurred and all of the assaults occurred at Appellant's residence while the child was outside the presence of another adult. The progression of Appellant's sexual assault on each of the victims also followed a similar path in that the assaults started with inappropriate touching through clothing and progressed to rubbing the victim's body underneath her clothing. Appellant's inappropriate touching

included rubbing the victim's vagina and progressed to digital penetration. Finally, in one instance, the assault culminated with Appellant inserting his penis into the victim's vagina. These horrible actions by Appellant on minor female children to which Appellant had a parental relationship clearly amounted, as the trial court found and the record supports, to an interwoven and tangled common scheme or plan of sexual abuse. *See Saez*, 225 A.3d at 179 (finding that, the fact that both victims were youthful females and that the abuse occurred in the victim's bedroom while the victim was away from protective family members and was vulnerable amounted to a common scheme or plan); *see also Lively*, 231 A.3d at 1006-1007 (finding that, a common scheme or plan existed when the victims were both female, under the age of ten, and Lively's nieces and that the abuse occurred in a secluded room of the victim's house where Lively would pull down the victim's pants and touch her genitals).

In reviewing the second prong of the joinder test, we concur with the trial court, and the result supports, that the evidence was capable of being considered separately by the jury as to each of the three victims. Although the sexual assaults on the three female victims contained commonality and sufficient similarities to consolidate the criminal informations, the sexual assaults were also distinct enough to be capable of separation by the jury so as to avoid confusion. With one of the paramour's daughters, Appellant's sexual abuse culminated with Appellant touching the victim while she was clothed and no one was around. The sexual abuse of the paramour's second

daughter culminated with Appellant digitally penetrating the victim. Finally, the sexual assault of Appellant's biological daughter culminated with Appellant raping his biological daughter. Thus, while the assault of each victim started with similar criminal conduct and progressed in a similar manner, each victim's assault ended differently – touching, digital penetration, and rape. Moreover, a review of the jury instructions, as well as the verdict slips,[6] further separated the evidence and corresponding criminal charges by each victim so as to avoid jury confusion. N.T., 5/17/23, at 692-703.

As to prejudice, the trial court rejected Appellant's assertion that the consolidation of the criminal informations would be unduly prejudicial because evidence of his sexual assaults against the paramour's daughters only served to show his propensity to commit sexual assault against his biological daughter. Trial Court Opinion, 12/12/23, at 11; *see also* Appellant's Brief at 9. The trial court found that evidence of Appellant's sexual assaults against the three minor female children "did not simply show Appellant's propensity to commit [the] crimes" but, rather, showed "a series of distinct instances of similar criminal conduct" that demonstrated an interwoven and tangled common scheme or plan of sexual abuse. As we agreed with the trial court that the evidence of the sexual offenses in one case was admissible in a

_____

[6] The jury was provided with two verdict slips, one for each of the two criminal informations. N.T., 5/17/23, at 693. Although the verdict slips are not part of the certified record before this Court, the trial court described the contents of each verdict slip in detail as part of its jury instructions. *Id.* at 692-703.

separate trial for the other sexual offenses to show a common scheme or plan, we concur with the trial court's rejection of Appellant's prejudice claim. Therefore, we discern no manifest abuse of discretion on the part of the trial court in consolidating Appellant's criminal informations.

Appellant's second issue challenges the admissibility of evidence, specifically evidence of statements his biological daughter shared with one of the paramour's daughters, a forensic interviewer, and an investigating police detective. Appellant's Brief at 4, 10-13.

"An appellate court's standard of review of a trial court's evidentiary rulings, which include rulings on the admission of hearsay, is abuse of discretion." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. Super. 2020) (original brackets omitted), *appeal denied*, 250 A.3d 1158 (Pa. 2021). "Hearsay" is defined as "a statement that [] the declarant does not make while testifying at the current trial or hearing[, and] a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1) and (2). A "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a). "Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Rivera*, 238 A.3d at 492 (citation and original quotation marks omitted); *see also* Pa.R.E. 802.

The Tender Years Hearsay Act[7] creates an exception to the general rule against hearsay for a statement made by a child, provided the child is "sixteen years of age or younger" when the statement is made and the statement relates to, *inter alia*, a sexual offense enumerated in Chapter 31 of the Crimes Code. 42 Pa.C.S.A. § 5985.1(a)(1) and (2); **see also** 18 Pa.C.S.A. §§ 3101 - 3141. Section 5985.1 of the Tender Years Hearsay Act states, in pertinent part, as follows:

### § 5985.1. Admissibility of certain statements

**(a) General rule. -**

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2) [(which included Chapter 31 – sexual offenses)], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the [trial] court finds, in an in[-]camera hearing, that the evidence is relevant and that the time, content[,] and circumstances of the statement provide sufficient *indicia* of reliability; and

(ii) the child either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a). As our Supreme Court explained,

the [Tender Years Hearsay Act] concerns the admissibility of out-of-court statements made by a child victim or witness to third

---

[7] 42 Pa.C.S.A. §§ 5981-5988.

parties. The admissibility of this type of hearsay is determined by assessing the particularized guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying. To determine whether a child's out-of-court statements are admissible under the [Tenders Year Hearsay Act], a trial court must assess the [relevance] of the statements and their reliability in accordance with the test enunciated in **Idaho v. Wright**, [497 U.S. 805, 821-822 (1990)]. Although the test is not exclusive, the most obvious factors to be considered include the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age[,] and the lack of a motive to fabricate.

**Commonwealth v. Walter**, 93 A.3d 442, 451 (Pa. 2014).

Here, Appellant argues that the trial court erred in admitting his biological daughter's statements to his paramour's daughter because the statements lacked sufficient *indicia* of reliability. Appellant's Brief at 10-11. Appellant asserts that his biological daughter only responded affirmatively to leading questions and her statements were not spontaneous because the statements were prompted by the paramour's daughter, were made without the requisite mental state because his biological daughter had just run away from home and was "battling demons," and did not include graphic sexual terminology and descriptions. **Id.** Appellant contends that the trial court erred in admitting his biological daughter's statements to a forensic interviewer because the statements lacked sufficient *indicia* of reliability. **Id.** at 11. Appellant asserts that, initially, his biological daughter replied negatively when asked by the forensic interviewer if Appellant hurt her body, touched it inappropriately, or exposed himself to her. **Id.** at 12. In a later interview, his biological daughter told the forensic interviewer that Appellant

had inappropriately touched her. *Id.* Appellant contends that his biological daughter's statements contradict one another and also contradict his biological daughter's statement to an investigating police detective, which declared that Appellant raped her. *Id.* Finally, Appellant avers that the trial court erred in admitting his biological daughter's statements to the police detective because the statements lacked a sufficient *indicia* of reliability. *Id.* Appellant argues that, initially, his biological daughter only told the police detective that Appellant inappropriately touched her and did not disclose that he raped her. *Id.* Later, in a subsequent interview, his biological daughter told the police detective that Appellant raped her. *Id.* Appellant also contends that, at the time his biological daughter made the statements to the police detective, she lacked the necessary mental state because she was incarcerated at the Lancaster County Youth Intervention Center. *Id.* at 13.

In admitting the statements, the trial court explained,

[Regarding the statements made to the paramour's daughter, the statements were initially discovered through unintentional means], as both of the paramour's daughters found the biological daughter's journal with a song verse referencing the abuse. When the [biological daughter] returned home, the three girls went into [the biological daughter's] bedroom. There, the paramour's daughters sought clarification of the meaning of the verse, asking [the biological daughter] if Appellant [] raped her. [The biological daughter] responded ["yes." One of the paramour's daughter's] asked if Appellant had "put it in" her. [The biological daughter] responded ["yes"] but was unwilling to go into further detail at that time. [Both of the paramour's daughters] sought to console [the biological daughter] to let her know that they too had experienced abuse by Appellant, and that she was not alone.

The next person [the biological daughter] disclosed the abuse to was [the] forensic interview[er] in August [] 2022. [The forensic

interviewer] had previously met with [the biological daughter] earlier in 2022 for a high-risk behavior assessment related to [the biological daughter's] repeated attempts at running away. During that assessment, [the biological daughter] did not disclose any abuse. After the discovery of the journal, [the biological daughter] was brought in for a forensic interview with the targeted topic being any abuse she may have suffered. A forensic interview is conducted with the specific policy of not asking the victim[] leading topics or suggesting answers[] but[,] instead[,] aims to prompt narrative answers in which the victim[] only disclose[s] what [he or she] feel[s] compelled to disclose on [his or her] own accord. Once again, [the biological daughter] disclosed that Appellant had touched her private parts.

The last instances of disclosure by [the biological daughter] were made to the investigating [police detective.] In the course of her investigation, [the police detective] met with [the biological daughter] to get a better understanding of where the alleged abuse occurred as both Appellant, [the biological daughter,] and the family of Appellant's former paramour moved frequently during the alleged time period of abuse. As [the biological daughter] recalled where they lived during the abuse, she would often disclose further details about the abuse that occurred in each location. In the midst of one such recollection, [the biological daughter] provided [the police detective] with a more complete account of the rape, recalling where she was, where [the paramour's daughters] were in the house in relation to her and Appellant, the time of day it occurred, what was playing on the television in the background while it happened, and that [Appellant] had "tried" to rape her because he was unable to fit his penis fully into her vagina after climbing on top of her following Appellant's initial touching [of] her vagina.

The [trial] court [found] that the congruity of the disclosures, the consistency both in what [the biological daughter was] willing to disclose and in her progression of willingness to disclose, and the credibility of the third-party witnesses provided a sufficient *indicia* of reliability.

Trial Court Opinion, 12/12/23, at 15-16 (record citation and footnotes omitted).

We begin our analysis of the trial court's evidentiary ruling by considering the statements made to the paramour's daughter. Here, the Commonwealth sought to introduce the biological daughter's statements to the paramour's daughter, in which the biological daughter indicated that she was "fighting demons" and that Appellant raped her. N.T., 5/16/23, at 201. The paramour's daughter explained that she and the biological daughter had conversations about why the biological daughter was "acting out" and the biological daughter explained that she was "battling demons and things that we don't know about." N.T., 5/15/23, at 128-129. The paramour's daughter also explained that, in an attempt to locate the biological daughter after she had run away from home, the paramour's daughter discovered song lyrics the biological daughter wrote discussing how Appellant inappropriately touched her. *Id.* at 130-131. When the biological daughter returned home, she was questioned by the paramour's daughter, who asked if Appellant had raped her and if he "put it in her." *Id.* at 133-134. The biological daughter responded "yes" to both questions without providing further detail. *Id.*

The Commonwealth also sought to introduce at trial a recording of an interview the forensic interviewer had with the biological daughter. N.T., 5/16/23, at 201. The forensic interviewer explained that, during the interview, the biological daughter stated that she wrote the song lyrics about Appellant inappropriately touching her, that the lyrics were discovered, and that, ultimately, that was how others learned of the sexual abuse. *Id.* at 161. On cross-examination during the Tender Years hearing, the forensic

interviewer also testified that, during the forensic interview, the biological daughter did not disclose that Appellant had placed his penis inside of her. *Id.* at 168.

Finally, regarding statements made by the biological daughter to the police detective, the Commonwealth sought to introduce statements establishing that Appellant touched his biological daughter, showed his penis to her, digitally penetrated his biological daughter's vagina, and inserted his penis into his biological daughter's vagina. *Id.* at 202-203. During an interview with the police detective, the biological daughter offered information freely about her sexual abuse, including that, during one Christmas holiday season, she recalled Appellant coming into her room, touching and digitally penetrating her vagina, and exposing his penis to her. *Id.* at 178. During a second interview, the biological daughter explained to the police detective that the sexual abuse occurred mostly in the living room of one apartment where Appellant resided. *Id.* at 182. Sexual abuse also took place in the bedroom of another apartment where Appellant resided. *Id.* at 182. The biological daughter recalled that, in the living room, Appellant would "touch her vagina over and under [her] clothing with his hands" and he would place his hands inside and outside of her vagina. *Id.* at 182. In the bedroom, the biological daughter recalled, on one occasion, that when a children's movie she was watching ended, Appellant entered the room, pulled down her pants, and touched her inside and outside of her vagina with his fingers. *Id.* at 183. The biological daughter also recalled an incident where Appellant came into her

bedroom while she was sleeping, pulled down his pants and her pants, and got on top of her. *Id.* at 183. The biological daughter explained that Appellant "tried" to insert his penis into her vagina. *Id.* at 183-184. As the biological daughter continued to disclose her recollections of the sexual abuse to the police detective, the police detective explained that she asked the biological daughter to "tell me more about that" situation so as to gather further information without asking leading questions. *Id.* at 184. The police detective stated that the biological daughter offered information regarding the rape on her own accord. *Id.* at 185. The biological daughter told the police detective that the sexual abuse started when she was five years old and stopped when she was nine or ten years old. *Id.* at 186.

Upon review, we concur with the trial court, and the record supports, that the statements introduced by the Commonwealth were relevant and showed a sufficient *indicia* of reliability. In considering the totality of the circumstances under which the statements were made, the statements of sexual abuse were consistent and continued to be more forthcoming as the biological daughter became more comfortable discussing the abuse and came to terms with what occurred to her at the hands of her father. Therefore, we discern no manifest abuse of discretion in the trial court's admission of these statements pursuant to the exception to the rule against hearsay which is expressed in the Tender Years Hearsay Act.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>10/01/2024</u>